## *In re* NATHAN CUSHING'S WILL.

*Will, Construction of. Annuity Apportionable. Interest. Taxes.*

1. The will gave $1,000 to the testator's wife; also, " the whole interest and income of $6,000 to be paid to her·each and every year during her·life "; and so much of the $6,000 itself as should be required to support her in a manner becoming her station in life, if the " said interest or income " should prove insufficient to effect that purpose, and then provided that the personal estate should be sold, and the real estate sold or rented, " to raise funds to pay debts, legacies and expenses "; *Held*, that the widow was entitled to the whole of the income and interest, without deduction of taxes or expenses.

2. An annuity given to a *widow in lieu of dower* is apportionable, and payable for a part of the year, to the time of the annuitant's death.

APPEAL from the Probate Court.

Heard on a commissioner's report, December Term, 1885, TAFT, J., presiding. Judgment *pro forma* for the appellant.

Henry Boynton was the executor of said Nathan Cushing's will, and the party appealing in this case from the decision of the Probate Court. James C. Barrett was the executor of the will of Lucy B. Cushing, the widow of said Nathan Cushing.

It appeared that the said Nathan died testate December 2, 1872, leaving the said Lucy B., his widow, and three children or heirs by a former wife, the said Lucy B. being his second wife. The said Lucy B. deceased November 14, 1883, leaving a will. The said testator gave to his son, Nathan Cushing, Jr., $4,000, which was to be controlled by a trustee, and said Boynton was made trustee by the will. March 3, 1874, the Probate Court directed the executor to retain $10,000, to carry out the provisions of the will as to Mrs. Cushing, and as to said Nathan Cushing, Jr. The $6,000 was invested in a mortgage on real estate; and the interest —$360—was annually paid by Mr. Boynton to Mrs. Cushing,

*In re* Cushing's Will.

about December 1. In the years 1881 and 1882, the executor, Boynton, deducted from the annual payments the sum of $137.69, which he had paid for taxes assessed on the $6,000. The executor claimed the right to retain this sum under the will. The commissioner found, in part, as to the over-payment:—

"I find upon the testimony of said Dr. Boynton, that, when he made the payments from year to year to Mrs. Cushing, he supposed them to be due as made, and did not think of them in the light of advanced payments, and made them as payments respectively for the year then past and as due; but that, on reviewing all that he paid out at last, he came to the conclusion that he had paid from year to year in advance, and that the payment made in December, the year previous to Mrs. Cushing's death, did, by a proper construction of the will, cover her expenses for that year in which she died; and that the last payment of $345.66 (being the proportion for the time she lived the last year) was an over-payment, and was never lawfully due."

It was also found that Dr. Boynton had funds of the Cushing estate in hand more than sufficient to pay the sum claimed by the appellee. The sum allowed the appellee by the Probate Court was the $137.69, and interest on the same.

The will is sufficiently stated in the opinion of the court.

*French & Southgate* and *W. E. Johnson,* for the appellant.

In 1881, the fund was listed to Dr. Boynton, as executor, and he paid the various taxes on that list, and deducted them from the "income" of the fund going to Mrs. Cushing. It was for Mrs. Cushing to pay the taxes, and not the estate of her husband. The testator made no provision for payment of the taxes out of his estate, although he must have known that the $6,000 fund would be subject to taxation.

If the court should consider that our view as to the taxes is wrong, there would still be nothing equitably due to Mrs. Cushing's estate. We claim that the last payment to her executor, of $345, December 23, 1883, was not due to her

estate, and that the executor holds that sum, to which he is not legally entitled. It being a voluntary payment, we cannot recover it back; but the executor, holding this money, cannot be permitted, before the Probate Court or on appeal, to recover other claims not amounting to that sum. The yearly payments were annuities, and not subject to apportionment. If the payments were not advance payments, Mrs. Cushing having died before the end of the last year, nothing became due for that year. 2 Red. Wills, 171 *n.* 17; *Wiggin* v. *Swett*, 6 Met. 194.

*Barrett & Barrett*, for the appellee.

The question is, whether, under the will bequeathing to her the *whole* interest, she is entitled to only a *part* of it.

There would seem to be no room for construction.

Without the aid of the dictionary, we know that the " *whole* " not only does not mean a " *part*," but means the whole as *contradistinguished from* a part.

The word " *whole* " must have its natural and primary meaning, unless that meaning produces an *absurdity*, or there is a subsequent provision so *repugnant* that it is an impossibility for the two to stand together. 3 Jar. Wills, 707, Rule xvi; *Pocock* v. *Attorney General*, 18 Moak Eng. Rep. 544. The testator made provision for the payment of necessary expenses. 3 Jar. Wills, 426; 10 Moak Eng. Rep. 731; 2 Jar. Wills, 211; *Peter* v. *Stirling*, 26 Moak Eng. Rep. 691. *See* also 2 Jar. Wills, 56; 1 Red. Wills, 435. No part of the $345, paid on account of part of the year 1883, can be recovered back, or used in offset. 78 Penn. St. 432. It was a voluntary payment. Rob. Dig. 526; *Burnham* v. *Strafford*, 53 Vt. 610; *Jervis* v. *Wolverstan*, 9 Moak Eng. Rep. 674; *Rogers* v. *Ingham*, 18 Moak Eng. Rep. 552.

The opinion of the court was delivered by

VEAZEY, J. The question is as to the proper construction of the provisions of the will of Nathan Cushing, de-

ceased, in behalf of his wife. He first willed her $1,000; then follows the principal clause in controversy, viz.:

"I also give and bequeath to my said wife the whole interest and income of $6,000 to be paid to her each and every year during her life, the first payment to be made at the close of one year after my decease, and so on annually thereafter as long as she shall live. And if said interest or income shall at any time prove insufficient to support her in a manner becoming her station and condition in life, and in such manner as shall make her comfortable, and meet all necessary expenses of a reasonably prudent course of life, then it is my will that so much of the said $6,000 shall be taken as shall be necessary to effect the object aforesaid."

He then gives his wife certain household furniture and clothing, and, after other provisions in her behalf, he provides that these "bequests and provisions" were to be upon condition that she should *relinquish and waive* her right to dower and assignment of any other personal property to her. He then makes bequests to others, but not sufficient to exhaust his estate, and then disposes of the residue to his children. He then provides that his personal estate shall be sold, and the real estate sold or rented, as shall be for the best interests of all concerned, "and shall enable him" (the executor) "to raise funds to pay debts, legacies, and necessary expenses."

He died leaving an estate of some $30,000.

We think it is very clear that it was the intention of the testator, by the provision for his wife above quoted in full, to give her the whole of the interest and income of $6,000 during her life for her support, without deduction of taxes or expenses. The language of the provision imports this, and such construction is strongly aided by the other provisions alluded to, and by the circumstances of his estate and condition. This intent, being manifest from the words of the will as a whole, must be followed,—*Richard-*

*son* v. *Paige*, 54 Vt. 373,—there being no other provision inconsistent with this one creating a legal impossibility that the two can subsist together.    *Hibbard* v. *Hurlburt*, 10 Vt. 173.

But it is claimed that the testator provided an annuity for his wife, and as, at the common law, annuities are not apportionable, and as we have no statute making them so, her executor, she being dead, had no right to the interest on the $6,000 which had accrued during the portion of the last year of her life previous to her decease, the provision for the payment of the interest being that it should be paid annually.

Treating this as an annuity, the proposition is sound that "annuities are not in their nature apportionable either in law or in equity." 2 Williams Ex. 835. But there are exceptions to the rule, and the same author says: "With respect to interest,—interest being due *de die in diem* is not one entire thing, but an aggregate of many distinct things," and may be apportioned. The language last quoted was evidently borrowed from the note to Clun's Case, reported in Coke's Reports, (vol. 5), Pt. 10, 128, *a*. The note is by Fraser, wherein he says, after the remark adopted by Williams: "It is obvious, therefore, that the representatives of a party dying before the day at which interest was usually payable, would be entitled to interest up to the time of the party's death." *Edwards* v. *Warwick*, 2 P. Wms. 171; *Hay* v. *Palmer*, 2 Ib. 501; *Banner* v. *Lowe*, 13 Ves. 135; *Wilson* v. *Harman*, 2 Ves. Sen. 672.

In Perry on Trusts, sec. 556, the author says: "But where an annuity is given to a *widow in lieu of dower*, or for maintenance of an infant, or for the separate maintenance of a married woman, an apportionment is made on the ground that such annuity is necessary for support till the death of the annuitant"; and he cites *Pearly* v. *Smith*, 3 Atk. 260; *Howell* v. *Hanforth*, 2 Black. W. 1016; *Green* v. *Osborn*, 17 S. & R. 171. And he says further: "But interest

money upon notes, mortgages, and similar securities, accrues from day to day, although it is not payable until a fixed day, it is therefore apportionable, and trustees must pay the proportion accruing during the life of the tenant for life to his representatives," and cites *Earp's Will*, 1 Pars. Eq. 453; 28 Penn. St. 368; *Sweigart* v. *Berk's Adm'r*, 8 S. & R. 299; Rogers' Trust, 1 Dr. & Sm. 338. I find these authorities support the propositions so far as I have access to them.

We think that we are justified by authority in holding to an apportionment in this case, especially in view of the fact that it will be the fulfillment of the wish and intention of the testator as indicated by the terms of the will.

Therefore the decree of the Probate Court should have been affirmed.

The *pro forma* judgment of the County Court is reversed. Judgment for the appellee for the amount allowed by the Probate Court, with interest from date of appeal and costs; and let this be certified to the Probate Court.