Rhode Island Hospital Trust Company, Trustee, *vs.* Nathan B. Harris *et al.*

PROVIDENCE—JUNE 25, 1897.

Present: Matteson, C. J., Stiness and Tillinghast, JJ.

Certain residuary estate was devised to a trustee with directions to pay therefrom to the testator's wife an annuity of two thousand dollars in semi-annual installments, and, *immediately* upon her remarriage or decease, to pay over, transfer, and convey nine-tenths of said estate to the persons and in the proportions specified in the will. The trustee was further directed to hold in trust the remaining tenth and to pay the income thereof to W. H. during his life and the principal thereof to the latter's children or their descendants *immediately* upon his decease. General power was given to the trustee to sell this trust estate at public or private sale, and to convey the same to the purchaser. The widow deceased August 10, without having remarried, and on the 8th of the following October the trustee sold and conveyed the property, receiving and holding the purchase money as part of said residuary estate.

*Held*, that the trustee had power to make such sale, and that its deed vested in the purchaser an indefeasible estate in fee simple in the land conveyed.

*Held*, further, that the word "immediately," as used in the will, may be considered to mean "within a reasonable time," or "as soon as may be."

*Held*, further, that the executor of the will of the widow was entitled to the proportionate amount of the annuity of two thousand dollars for the period between the time of the last semi-annual payment to her and the date of her decease.

It is a general rule that annuities, whether created *inter vivos* or by will, are not apportionable in respect of time; but an annuity given in place of dower is an exception to the rule, as such annuity should last as long as the dower of which it takes the place.

Bill in Equity for an opinion upon questions and facts fully stated.

Matteson, C. J.   Three questions have been submitted to us, viz. : (1) Whether the complainant had power, under the trusts in the will of Caleb Harris, to sell and convey the real estate referred to in the bill to Emma L. Howard, as stated

in the bill. (2) Whether the complainant's deed to her vested in her an indefeasible estate in fee simple. (3) Whether Frank Potter, as executor of the will of Eliza A. Harris, the widow of the testator, is entitled to receive a pro rata amount of the annuity of two thousand dollars, given to her in the will during her life, for the period between April 10, 1896, the date of the last payment to her on account of the annuity, and August 10, 1896, the date of her decease.

The trust concerning the residuary estate, of which the land sold to Emma L. Howard formed a part, provides that the trustee, immediately on the marriage or decease of the testator's wife, whichever may first happen, shall pay over, transfer and convey nine-tenths of the trust premises and estate to the persons and in the proportions specified, and then provides, "As to the remaining one-tenth part my will is, and I hereby direct said Rhode Island Hospital Trust Company to hold the same in trust, and to pay over the income thereof annually to said William Harris, son of my brother the said Harding Harris, during his natural life, and immediately upon his decease to pay over and transfer the principal thereof to the children of said William Harris then living, and to the descendants of any of them who may then have deceased, in equal shares," &c. Then follows a power to the trustee to sell and dispose of the trust estate by public auction or private sale, and to make and execute all necessary conveyances for vesting the premises sold in the purchaser or purchasers.

In opposition to the view that the complainant had power to sell the real estate in question, reference is made to the language of the trust that the trustee shall immediately on the marriage or decease of the testator's wife pay over, transfer and convey the trust premises ; and it is argued from this that it was the testator's intention that the trust as to this portion of his estate should end with the death of his widow, and that the estate as it then was should be conveyed to the persons to whom it was given. Stress is laid on the word "immediately," and it is contended that the testator would not have used that word if he had intended that the trustee should have power to convert the real estate into money after

the widow's decease ; nor would he have used the words
"transfer and convey" in the direction to the trustee as to
the distribution of the estate, but would have used simply
the words "pay over." And it is suggested in this connec-
tion that the power following the trusts is not inconsistent
with these contentions, since the will contains other trusts
and the power may be necessary for the proper execution of
the other trusts till they are terminated.

While there is perhaps some force in these suggestions, we
have nevertheless reached the conclusion that the complainant
had power to make the sale, and that its deed to Emma L.
Howard, the purchaser, vested in her an indefeasible estate
in fee simple in the land conveyed. The trust is not in terms
terminated by the decease of the widow. It still remains for
the trustee to distribute the trust estate as directed. The
will was made in 1869 and admitted to probate in 1871. It
was not improbable that the trusts might continue for a long
term of years, as the event has proved. The distributees of
the estate under the trust might in the lapse of years become
numerous, and their interest in the trust property propor-
tionately minute. In such circumstances it might become
expedient that the real estate should be sold, for the advan-
tageous distribution of the trust property. The word "im-
mediately" may well be considered to mean "within a rea-
sonable time" or "as soon as may be" after the decease of
the widow ; and, as the trust is not in terms terminated by
that event, we think that the power is applicable to a sale by
the trustee subsequently thereto, and consequently that it
might properly be exercised for the purpose of distributing
the trust estate if the trustee deemed it advisable for the
interests of the cestuis que trust to make the sale for that
purpose. That the testator may have contemplated such
exercise of power is indicated by the language concerning
the disposition of the one-tenth of the residuary trust estate,
which the complainant is to continue to hold for the benefit
of William S. Harris, son of Harding Harris, for life, the
direction to the trustee on his decease being to pay over and
transfer the "principal" thereof to his children, the word

"principal" implying that in so far as the real estate might constitute a part of that one-tenth of the trust estate it might be converted into personalty.

As to the third question, we are of the opinion that the executor of the will of the widow is entitled to the proportionate amount of the annuity of two thousand dollars for the period between April 10, 1896, and the decease of the annuitant on August 10, 1896. While it is the general rule that annuities, whether created *inter vivos* or by will, are not apportionable in respect of time, an exception has been allowed in case of an annuity given in lieu of dower, the reason for the exception being that, as dower lasts during the life of the widow, what is given in its place should last the same length of time. *Gheen* v. *Osborn*, 17 S. & R. 171; *Blight* v. *Blight*, 51 Pa. St. 420; *In Re Cushing's Will*, 58 Vt. 393; *Lackawana Coal & Iron Co.'s Petition*, 37 N. J. Eq. 26; 2 Am. & Eng. Enc. L. 2 ed. 400, 401. Such a conclusion is in harmony with the policy of our statutes (Gen. Laws R. I. cap. 203, §§ 38, 39, 45), which provide for an apportionment for the current year of an annuity given by will made subsequently to February 1, 1896, unless provision be made to the contrary in the will, in case of the death of the annuitant before the termination of the year from the time when the whole of the annual allowance for the preceding year has become due.

*James Tillinghast, William R. Tillinghast and Theodore F. Tillinghast,* for complainants.

*Clarence A. Aldrich, Henry J. Dubois, Dexter B. Potter, Stephen O. Edwards, Walter F. Angell, Stephen A. Cooke, Louis L. Angell, Alfred S. Johnson and Charles M. Salisbury,* for the several respondents.

