RAILWAY COMPANY *v*. BIRNIE.

Opinion delivered April 21, 1894.

1. *Practice—Reasonable time a question for the jury.*
   Where the proof was that certain land was donated to a railway company "to erect and maintain a depot, and for that purpose only," and that the donation was made in anticipation of the enhancement in value of adjacent property belonging to the donors, the question whether the occupancy, by the company, of the land as a depot for eleven years was, under the circumstances, a sufficient length of time to afford the donors opportunity to substantially realize from the occupancy the benefits reasonably anticipated at the time of the donation, was properly left to the jury.

2. *Condition subsequent—Forfeiture—Evidence.*
   Where a forfeiture is sought of land donated to a railway company for the purpose of maintaining a depot, and for that purpose only, upon the ground that the depot had not remained upon the lots for such a length of time as amounted to a performance of the condition of the donation, the plaintiffs do not make a *prima facie* case by proving that the company, after occupying the land in the manner required by the grant for eleven years, had removed the depot from the land, and that this removal had rendered adjacent property of plaintiffs less valuable for hotel purposes.*

Appeal from Sebastain Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

---

*NOTE.—As to forfeiture of donations made to secure location of public buildings, etc., see *Ayres* v. *Dutton*, 13 L. R. A. 699.—(REPORTER).

## STATEMENT BY THE COURT.

In 1878, Chas. A. Birnie, W. S. Birnie and H. C. Birnie donated to the Little Rock & Fort Smith Railway Company certain lots in the city of Fort Smith upon a condition subsequent, the exact nature of which is in dispute. The company took possession of the lots in the year mentioned, and erected upon them a depot, which it maintained there until sometime during the year 1889, when new depot buildings were put up on other lands situated at a distance of several blocks from the first location, and the lots obtained from the Birnies ceased to be occupied by any building used for depot purposes.

This action, based upon the alleged forfeiture by the company of its right to the lots, was brought by the appellees in September, 1890. The writing by which the grant to the company was made, and which appears to have been without formality as an instrument of conveyance, having been lost, parol evidence was adduced to prove its terms, so far as these bore upon the condition it contained. The effect of this evidence is concisely stated in the court's charge, as are also the issues on which the parties went to trial.

The testimony of Charles Birnie, who was the principal witness for the plaintiffs, so far as it is important to refer to it, was as follows : He stated that " he and the other plaintiffs owned the lots in controversy ; that in 1878, the defendant railway company being desirous of moving its depot from the Cherokee Nation, just opposite Fort Smith, over to the town of Fort Smith, application was made to him and the other heirs for a donation of the lots for depot purposes. The railway got the right of way through the town, and they had Mr. Henry Reutzel, administrator of their father's estate, to go to witness and ask for a donation of the lots. Witness and

his family declined to make a donation, and they refused positively to sign a deed. Afterwards some other parties came and proposed that plaintiffs let the railroad have that land to put a depot on and keep one on, the company already having a right of way through the street or alley. The plaintiffs signed the agreement or paper that was offered them, giving the railway company the privilege of putting up a depot on the lots in question. As far as witness could remember, the language was that the railway company should have the privilege of putting up and maintaining a depot on these lots. This agreement was not a deed, as witness understood it, but was simply a written agreement to take possession for that purpose. Witness's recollection was that nothing was said in the deed about general railroad or building railroads in any way, because plaintiffs had refused to donate the land outright to the company. Plaintiffs felt that they were not able to give the railway the lots, and witness, for one, was positive that he wanted the railroad simply to have it for depot purposes and the maintenance of a depot thereon. Witness stated that he could not say what the lots were worth, but he thought that, at the time the permission was given, the property was worth $6000 or $7000 or $8000; that is, from $60 to $70 a front foot. Witness said that he understood that the written instrument said that the railway might take possession of this property for the purpose of constructing and maintaining a railway depot and for no other purpose—that was his recollection. At the time plaintiffs gave this written instrument, it was urged by the citizens of Fort Smith against their wishes, and they consented because they wanted a depot there, and that was the only reason they would consent to make the written instrument. At that time Fort Smith was about half the size that it now is, and it was in 1878 that the written instrument was given." On

cross-examination, witness said "that the word 'depot,' or 'depot purposes,' was all that was in that written instrument. He did not know whether it was freight depot or passenger depot, but he intended it for a passenger depot. Part of the depot building was on lot 10, and then they moved the old passenger depot down to where the large passenger depot is now, and the old building is still standing on lot 9. Two depots were built on these lots; the first one was a combined passenger and freight, and after that they put up the old depot for passenger purposes. Witness could not say when this was done. The second depot was built some little time after the first. The first one was put up; then they put up a long row of cotton pens, that came down to Walnut street; and then the business of the company got so large that they had to use the old passenger depot for a freight depot, and they put up another passenger depot on the lots. In 1889, witness said, the freight depot was torn down. It stood on the lots in question from 1878 to 1889. Witness said that plaintiffs owned other lots across the alley from these lots, but sold them to Al Belt, about the time the railway company moved the depot. He got $6000 for these lots. At the time witness sold this other property he got full value for it."

He also stated that the benefit he expected from the location of the depot was the enhanced value of those lots for hotel purposes. It does not appear whether any improvements were ever put upon the lots.

W. S. Birnie, after giving other testimony as to the terms of the donation, stated on cross-examination "that he did not know what length of time the depot was to be maintained. The company did build a combined passenger and freight depot upon the land. He had nothing to do with the management of the property, as his brother, Charles, always attended to it. He could not say, when Charles sold the lots across from the depot,

whether he got full value or not. Witness when he signed the written instrument had no object whatever in the matter; he did what his brother Charlie advised. Plaintiffs owned other property around Fort Smith—a good deal of it. They had sold some of this property."

Geo. H. Lyman, also a witness for the plaintiffs, stated "that the moving of the depot from these lots might decrease the value of the adjoining Birnie property some, and, again, it would increase its value for other purposes. This adjoining Birnie property was never used, as far as witness knew, for hotel purposes."

H. C. Birnie testified "that he was one of the plaintiffs, and that his recollection was that the written instrument was given to the railway company for the purpose of enabling it to build and maintain a depot, and for no other purpose. This was the only consideration named in the instrument. Witness knew nothing about the length of time the railway company was to have the land; in fact, knew very little about the transaction. Witness stated that, at the time the written instrument was made, in 1878, the principal business portion of the town was on Garrison avenue. Since that time the retail trade has moved up the avenue. At that time the property in question was near the business portion of the town. Since that time the business portion of the town has moved up Garrison avenue away from these lots. There were hotels down on Second street and on Walnut street, and the St. Charles Hotel was there, where it is now, at that time."

J. K. Foltz testified that the removal of the depot depreciated the value of lots one and two for hotel purposes.

The land donated was part of block 2. The plaintiffs, at the time of the donation, also owned lots 1 and 2 in the same block. These two lots are the lots spoken of by Charles Birnie as having been sold to Belt. The

evidence does not show what their value was when the depot was established.

James Brizzolara, a witness for the defendant, stated, among other things, that, in the instrument executed by the plaintiffs to the defendant, there was nothing said as to the length of time the depot was to remain where it was then placed; and in this respect his testimony was without contradiction.

The defendant requested the following instruction, which was refused: "1. That under the circumstances and facts as developed by the testimony of the witnesses in this case, the rise and fall in the value of the real estate in the city of Fort Smith from 1878 to 1889 (a period of eleven (11) years), the plaintiffs being residents of Fort Smith during all that time, with full opportunity to know and understand as to such rise and fall in the value of real estate, such period of eleven years, during which the defendant did build and maintain a depot on the lots, was a reasonable length of time to afford the plaintiffs full opportunity to substantially receive, from the occupancy of the lots by a depot, all the benefits they anticipated therefrom at the time of the donation, and your verdict should be for the defendant."

The charge of the court was as follows:

"1.  Plaintiffs sue the defendant for the value of certain lots which they claim have reverted to them by forfeiture, in that the defendant has broken the condition upon which they were donated to it.   The first question is, what were the terms of the condition of the so-called donation under which defendant took possession?  Col. Brizzolara testifies that the condition of donation was simply 'for depot purposes.'  C. A. Birnie, that, 'the railroad should take possession, build and maintain a depot on the lots, and for no other purpose.'  W. S. Birnie, that it was 'to erect and maintain a depot, and for that purpose only.'  It is conceded that there were

in the written instrument no other terms, limitations or restrictions other than the condition (whichever it may have been) as testified to by the said witnesses.

"2. If the language of the condition was as testified to by Col. Brizzolara, and if defendant is occupying and using said lots for its necessary depot switches, in connection with its present depots, defendant has not forfeited the lots, and is entitled to a verdict.

"3. If the language of the condition was as testified to by the Birnies (for the effect of the language given by each is about the same), then the case turns upon what that condition required the railroad to do, and whether the removal of the depot was a breach of that condition, and a forfeiture of the lots back to the plaintiffs. Now, the court tells you that, by the language of the condition, as given by the Birnies, the railroad was required to build a depot (which it is conceded was done), and to maintain and keep it there for such a length of time as that the Birnies would have full opportunity and time to substantially realize the benefits they at the time reasonably expected to accrue to them from the location of a depot. In other words, the language of the donation does not, in the eye of the law, require that the defendant should keep and maintain a depot on the lots always; but the law says that by it the defendant was required to locate its depot on them in good faith, and to keep it there for a reasonable length of time—that is, for such time as would give the Birnies ample time and opportunity to realize whatever benefit they expected, at the time of the donation, from the location. It does not matter that the Birnies did not realize any benefit therefrom. If the depot remained on the lots for such time as that they had full opportunity to substantially realize the advantages, if any, that, at the time of the location of the depot on the lots, were to them, the defendant cannot be deprived of the property.

As to whether the occupancy by the railroad of the lots as a depot from 1878 to 1889 was for a reasonable length of time to afford the plaintiffs full opportunity to substantially receive from the occupancy all the benefits they anticipated therefrom at the time of the donation, you are to determine."

4.   "If you find for the plaintiffs, you will give them as damages the value of the property at the time of the filing the complaint herein."

The jury returned a verdict for the plaintiffs, and assessed their damages at the sum of $3000.

The defendant moved for a new trial on the ground that the court erred in refusing the defendant's instruction, and in giving the third and fourth of the court's instructions.

*Dodge & Johnson* for appellant.

1.   The complaint simply makes a case of "unlawful detainer," but fails to allege demand in writing, and there is no prayer for recovery of the land.   Mansf. Dig. sec. 3348, 3361–2, etc.

2.   If the action is ejectment, the complaint is defective, because it fails to state facts sufficient to constitute a cause of action.   No prayer for possession is made.

3.   If the action is for damages by reason of breach of contract, the complaint is defective, as there is no allegation that there ever was a contract.

4.   The verdict is contrary to the evidence, and is not responsive to the complaint.   There is no proof that the railway ever assumed any personal obligation in this whole matter, or that it bound itself in any way to respond in damages, in the event it failed to comply with an alleged condition in the grant.   37 Ark. 26.   Plaintiff's remedy, if any, is in equity.   51 Ark. 266.   They cannot sue at law, and recover the value of the land,

without having the title vested in the railway upon payment of the amount recovered.

5. If, however, it is admitted that plaintiffs' allegations are true, namely, that they granted permission in writing to defendant to use said lots "for erecting a depot, and maintaining the same thereon, and for that purpose only," then we submit that, time not being the essence of the grant or condition, the same has been complied with, and the user or license has ripened into a title, which plaintiffs cannot take from the defendant, nor recover damages therefor. 19 Ark. 33; 47 *id.* 71; 49 *id.* 506; 14 S. & R. 267; 16 Am. Dec. 497; 3 Duer, 255–261; 7 Oh. St. 1; 30 A. & E. R. Cases, 305; 66 N. C. 504; 1 Me. 117; 5 *id.* 9; 13 N. H. 375.

6. It was error to refuse the first instruction asked by defendant, and it was error to give the third asked by plaintiffs. It was the duty of the court to say, as matter of law, whether twelve years was a reasonable time under the grant. 4 Mo. 522; 18 Mich. 306; 35 *id.* 13, 515; 39 Kas. 634; 2 Pars. Cont. 47, 173; 52 Ark. 410; 20 N. Y. 131; 43 Ill. 420; 10 Wall. 132; 19 Wall. 562; 49 N. Y. 225; 18 Mass. 43; 39 *id.* 555. Twelve years was a reasonable time, and would perfect the title to the land under the grant. 7 Wall. 290; 100 U. S. 549; 136 U. S. 393; 38 A. & E. R. Cases, 698; 17 *id.* 33; 20 *id.* 371; 98 Ind. 375.

7. Defendant is not liable to the plaintiffs in this case for the reasons:

*a.* It did not obligate itself never to remove its depot from the lots granted by plaintiff, and there is no personal liability for so doing.

*b.* To have made such a contract would have been void as contrary to public policy, and no recovery could be had thereunder.

Greenhood, Pub. Pol. Rule 149, p. 316–321; 60 Ill. 138; 62 *id.* 309; 64 Ill. 414; 71 *id.* 532; 113 *id.* 145; 35

Mass. 479; 1 McCrary 196–8; *ib.* 551; 53 Iowa, 126; 31 Am. Rep. 153; 20 L. R. A. 419.

*Britton H. Tabor* for appellees.

1. The court properly instructed the jury as to the law in this case. On the terms and conditions appellant was granted permission to take possession of this property, and its abandonment for depot purposes, and converting it into general railway purposes, appellees were entitled to recover the value of the lots. The agreement was that appellant could own and occupy the land for depot purposes only. When it ceased to use the lots for such purposes, they would revert by forfeiture. 4 How. 376–7; 13 Me. 31; 15 *id.* 216; 38 A. & E. R. Cases, 713–14; 25 Iowa, 371; 38 Wis. 165; 31 Mich. 42; 17 A. & E. R. Cases, 33; 31 Mich. 42; 16 Johns. 47; 28 Grant, Ch. 583; 25 Iowa, 371; 21 N. E. Rep. 489; 27 Miss. 203; 11 Ill. 336; 13 *id.* 456; 85 *id.* 116; 27 N. J. L. 13; 94 Ill. 85; 17 S. W. Rep. 278; 20 N. Y. Sup. 551; 89 Ind. 375; 74 U. S. 270; 59 Vermont, 426; 53 N. W. Rep. 807; 38 Minn. 122; 35 N. W. Rep. 862; 42 Minn. 99; 43 N. W. Rep. 964; 45 Vt. 400; 81 Mo. 503; 102 Mo. 464; 70 Pa. St. 235; 105 Mass. 241; 23 Atl. Rep. 996; 38 Am. & Eng. Ry. Cases, 697 and note pp. 711 to 718.

2. The contract was not void as being against public policy. There was no restriction against building a depot in any other locality, and no agreement to force the railway company to keep the depot at this locality, perpetually, against the public interest. 38 Am. & Eng. R. Cases, 697 and notes, pp. 711 to 718; 5 N. E. Rep. 404; 12 Neb. 631; 25 Iowa, 371; 3 Am. & Eng. Enc. Law (note), p. 878; 62 Texas, 260; 60 *id.* 545; Ray on Negl. Imposed Duties, p. 89, 90.

3. The question was properly left to the jury. It was not matter of law to be decided by the court. 9 S. E. Rep. 1127.

4. The verdict of the jury was too small. It was agreed on the trial that the value of the lots was $5000.

MANSFIELD, J., (after stating the facts). It is conceded that, the defendant having appropriated the lots in controversy to general railroad purposes by occupying them with its main track and side tracks, the plaintiff could not have maintained ejectment to recover them[1]; and that this action was simply to recover their value. Such being the nature of the case, it is urged that the plaintiffs could only proceed as upon a complaint in equity to enforce a vendor's lien ; and this, it is said, is the doctrine of *Organ* v. *Railway Co.* 51 Ark. 265. But that decision, while it upholds the right to relief in equity on the facts there presented, does not limit the land-owner to an equitable remedy in all cases where his property is taken without statutory proceedings and without compensation ; and the opinion of the court does not undertake to say that such compensation might not, in some cases, be the subject of a recovery at law. The following extract from the opinion referred to will indicate that the rule stated was not confined to equitable proceedings :

"The right," said the court, to property taken by a railroad company "can only be acquired by the company by purchase, by adverse possession for the statutory period, or by statutory proceedings for the assessment of damages. The company can only acquire it through the right of eminent domain by making just compensation. Until then, it remains in the original owner. The power to take, and the obligation to indemnify for the taking, are inseparable. But the owner may waive formal condemnation proceedings and all formal modes of transfer, and elect to regard the action of the railroad company as taking the land under the

---

1. See *Reichert* v. *St. L. & S. Fr. Ry.* 51 Ark. 491.

right of eminent domain, and demand and recover just compensation." Among the cases cited by the opinion in this connection is one in which the Supreme Court of Kansas sustained the right of a land-owner to recover, in an ordinary action, compensation for damages suffered by the wrongful appropriation of his land by a railroad company. *Cohen* v. *St. Louis, etc. R. Co.* 34 Kas. 158. But the question as to whether the remedy should be equitable is not raised on this record. The defendant made no motion to transfer the cause to the equity docket, and is not therefore in a situation to complain that it was tried at law. Without regard to the form of the proceeding, the plaintiffs, if they were entitled to recover at all, were entitled to a judgment for the value of the land; and this could have been so framed as to vest title to the property in the company.

Although much of the argument of counsel on both sides is devoted to a construction of the condition of the grant to the defendant, neither of the parties appear to have insisted at the trial upon any interpretation different from that found in the court's charge. No part of the charge was objected to by the plaintiffs, and the defendant's request is not materially different from the court's third instruction, as to the effect of the condition. The objection made to the fourth instruction has not been insisted upon, and the only questions to be decided, are, (1) whether it was error to submit to the jury the question of reasonable time, and (2) whether the evidence is sufficient to support the verdict.

Except with reference to some particular classes of cases, the authorities do not lay down any general rule for determining when the question of reasonable time is for the court, and when it is for the jury. It is always for the court, it seems, when it may be decided by applying some positive rule of law or by the construction of a written instrument. In other cases, whether the ques-

1. When reasonable time a question for jury.

tion is one that may be resolved without the aid of a
jury depends upon the circumstances out of which it
arises. *Derosia* v. *Railroad Co.* 18 Minn. 133–143; 19
Am. & Eng. Enc. 640–641, note 4, 642, note 2; Starkie's
Ev. 774; *Mayor* v. *East Tenn. etc. R. Co.* 9 S. E. Rep.
1129[1]. The time may be "so short or so long that the
court will declare it to be reasonable or unreasonable as
matter of law." *Johnson* v. *Agricultural Co.* 20 Mo.
App. 100; *Lancaster Bank* v. *Woodward*, 18 Pa. St. 362.
But where the time falls between these extremes, or the
motives of a party are involved, or where the facts are
not clearly established, or are such that men of equal
intelligence might draw from them different conclusions,
in such cases what constitutes a reasonable time is a
question to be answered by a jury. *Lamb* v. *C. & A. R.
R. and Trans. Co.* 2 Daly, 473; *Hill* v. *Hobart*, 16 Me.
164; *Druse* v. *Wheeler*, 26 Mich. 189; *Lancaster Bank*
v. *Woodward*, 18 Pa. St. 162.

Leaving out of view for the present the question
made here as to the sufficiency of the evidence to estab-
lish the plaintiff's cause of action, we think the court
did not err in treating this case as one which it was not
improper to submit to a jury, and the defendant's re-
quest was therefore properly denied.

But although the reasonable time to be arrived at
was not one that could be defined and limited by the
mere application of a legal principle[2], and was therefore
one to be drawn, in a general sense, as a conclusion of fact
from the evidence, it was so nearly a conclusion of law
that a just solution of the question would no doubt have
been facilitated by a special finding of facts[3]. A spe-
cial finding was not, however, requested, and we dis-

---

1. See also *Luckhart* v. *Ogden*, 30 Cal. 547.
2. Starkie's Ev. 776, 774, and note *s*.
3. *Ib.* See also Mansf. Dig. secs. 5142, 5143.

cover no objection to the charge under which the general verdict was returned.

Whether the verdict rests upon evidence legally sufficient to support it, is a more embarrassing question.

*2. Evidence held not to sustain a forfeiture.*

In returning whether "in point of fact"[1] the time during which the depot was maintained upon the lots was a reasonable time, within the meaning of the court's charge, the jury were not at liberty to act upon a mere opinion of their own that it was unreasonable; but it was for them to say whether the time was reasonable in the sense that it gave the plaintiffs "full opportunity" to substantially realize the benefits they at the time of the donation "reasonably expected to accrue to them from the location of the depot." And the issue was such that the plaintiffs were not entitled to a verdict unless they had shown, by a preponderance of the evidence, that the time was not, in the sense suggested, reasonable. Their cause of action was grounded upon the alleged fact that the lots had reverted to them; and this reversion they could only prove by showing that the depot had not remained upon the lots for such length of time as amounted to a performance of the condition on which the property was granted. That the proposition on which they relied might be stated in a negative form, namely, that the time was not reasonable, did not relieve them of the burden of proof[2]. With more propriety their proposition can be said to be the affirmative one—that the defendant's right to the lot has been forfeited; and this they were required to sustain by showing that a greater time was essential to a fulfillment of the condition subsequent. Unless a forfeiture had occurred, the plaintiffs did not own the depot lots, and, if they did not own them, they had no right to recover their value. Now, it seems

---

1. Starkie's Ev. 774; *Luckhart* v. *Ogden*, 30 Cal. 560.
2. 1 Whart. Ev. 356–357; *Goodwin* v. *Smith*, 72 Ind. 114.

to us that the plaintiffs did not make a *prima facie* case by merely proving that the railway company, after occupying the land donated, in the manner required by the grant, for eleven years, had removed the depot from them, and that this removal had rendered the two adjacent lots less valuable for hotel purposes; and yet these facts appear to be subsantially all that the jury could have found, favorable to the cause of the plaintiffs, from the evidence set forth in the abstracts of the record. From these facts, standing alone, it does not result, as a conclusion of law, that the time during which the depot was maintained at its original location was not a reasonable one; for, notwithstanding such facts, it may have been true that all the enhancement of value reasonably anticipated to lots one and two for hotel purposes might have been realized long before the change of location, or may have been received by the plaintiffs on the sale of the property to Belt. It is not shown that lots one and two had any peculiar advantages as a site for a hotel over other lots in the same vicinity, or that they were ever improved or used for that purpose, or were likely to be at the time the depot was removed; and from all the circumstances of the case it is reasonable to suppose that any influence exerted on the value of the lots for hotel purposes by the mere presence of the depot may have been fully developed before they were sold. And if that influence had reached its maximum before the removal of the depot, it does not aid the plaintiffs' case to show that the removal depreciated the value of the lots, or that they were sold in anticipation of such depreciation, for it still may be true that eleven years had afforded the opportunity for enjoying all the benefits originally expected.

The evidence shows that Fort Smith nearly or quite doubled its population between the date of the depot's first establishment and the month of September following

its removal to a new location. Eleven years, falling within this era of the city's growth, would seem to be a sufficient period in which to obtain all the benefits constituting the inducement to the plaintiffs' donation.[1] It was a period during which the business of the city moved away from the vicinity of lots one and two, and if there was anything peculiar in the situation of that property, making a longer time necessary to the enjoyment of all the advantages, or benefits, contemplated by the condition of the grant, as construed by the court, it was incumbent upon the plaintiffs to show it.

As the evidence on the part of the plaintiff is, in our opinion, entirely consistent with the proposition that the time in question was in fact reasonable, we cannot hold it sufficient to sustain the verdict.[2]

The judgment is therefore reversed, and the cause remanded for a new trial.

Judge Hughes did not participate. Wood, J., dissents.

---

1. *Jeffersonville, etc. Railway* v. *Barbour,* 89 Ind. 378; *Texas, etc. R. Co.* v. *Marshall,* 136 U. S. 393; *Close* v. *Railway Co.* 17 Am. & Eng. R. Cases, 35.

2. *Railway Co.* v. *Henderson,* 57 Ark. 402; *Catlett* v. *Railway Co.* 57 Ark. 461.