ROTHSCHILD ET AL., EXECUTORS, *v.* WEINTHEL.

[No. 23,453. Filed June 30, 1921.]

1. TRUSTS.— *Life Estates.— Beneficiary's Interest of Cestui Trust.*—Where real estate, or the income from real estate, is devised to trustees to pay over the income to a person for life, such person is entitled only to the net income, after the payment of taxes, repairs and the expense of .administering the trust, unless the will contains· a provision to the contrary. p. 94.

2. WILLS.—*Construction.—Life Estate.—Cestui Trust.*—In the absence of anything in a will manifesting an intent that the taxes and expenses of administration shall be paid out of a different fund, or that the life beneficiary shall .receive the interest or income without the deduction of such items, the taxes and expense of administering a trust of personal property shall be first paid out of the income and only the net balance paid to the life beneficiary. p. 95.

3. WILLS.—*Construction.—Income from Trust.*—Where an established rule of law has annexed a definite meaning to the language used in a will or contract, it is as if such legal interpretation of the language so used were written therein, as where a testator devised real and personal property in trust, directing the payment of the income to his wife, and there were no provisions in the will that the payment of taxes, repairs and expense of administering the trust must ·be borne by the corpus of the fund, such expenditures must be paid out of the income, before the "balance of revenues", is paid such beneficiary. p. 96.

4. WILLS. — *Action for Construction. — Pleadings. — Issues.* — Where the petitioners prayed for the construction of a will, and ·the defendant answered by general denial, such answer only presented the issue as to whether or not the will ought

to be construed, and not whether it should receive a particular construction suggested by the complaint. p. 97.

5. APPEAL.—*Actions for Construction of Wills.—Costs.—Liability.—Statutes.*—In a suit for the construction of a will, where the defendant answered by general denial, and the court construed the will, under §617 Burns 1914, §590 R. S. 1881, the defendant is liable for the costs. p. 97.

6. APPEAL.—*Actions for Construction of Wills.—Remaindermen. —Right of Appeal.*—In an action for the construction of a will, where the costs adjudged against the executors are payable out of the estate of remaindermen, after the death of life beneficiaries, the remaindermen are entitled to an appeal from such decree. p. 97.

From Allen Circuit Court; *J. W. Eggeman,* Judge.

Action by Joseph S. Rothschild and others, as executors of the will of Aaron Rothschild, against Pauline B. Weinthel. From a judgment for defendant, the plaintiffs appeal. *Reversed.*

*Leonard, Rose* and *Zollars,* for appellants.
*Barrett, Morris* and *Hoffman,* for appellee.

EWBANK, J.—This was an action to construe the will of Aaron Rothschild, in which the executors and a number of the nephews and nieces of said testator, named in his will as residuary legatees, joined as plaintiffs. The appellee filed an answer of general denial to the complaint. The circuit court made a special finding of facts and stated five conclusions of law thereon, and the plaintiffs (appellant) other than the executors excepted to each of the first, second, third and fifth conclusions of law. The fourth conclusion, to the effect that plaintiffs were entitled to have the will construed, was not excepted to. Judgment was rendered in conformity with the conclusions of law. The said nephews and nieces, named in the will as residuary legatees, separating from the executors, have joined in an assignment of errors attacking each of the conclusions of law excepted to.

The special finding of facts followed in general the averments of the complaint and was in substance as follows:

That Aaron Rothschild died testate on June 30, 1915, and on July 1, 1915, his will was admitted to probate; that the appellee is his widow, having remarried, and two of the appellants are his executors, and the others are his nephews and nieces mentioned in his will, and the children of one of his nephews, who died intestate since his death; that by his will, said Rothschild directed that his debts be paid, and bequeathed $200 to the Cleveland Hebrew Orphans' Asylum, and then provided:

"Item 3. I give and devise to my beloved wife, Pauline B. Rothschild, for and during her natural life, in lieu of any interest she may have in my estate under the law, the house and lot where I now live (describing it).

"I also bequeath to her absolutely all household goods, furniture and provisions which may be on hand and situated on said premises at the time of my decease, together with any horses, harness, carriages, which I may have at said time.

"Item Fourth: I give, devise and bequeath all other property real and personal, of which I may die possessed, including real estate situate in Portland, Jay County, Indiana, and also (including the property described in item third of this will, subject to the life estate of my wife) to my executors hereinafter named, to be held by them in trust, to be disposed of as provided in item fifth of this will.

"Item Fifth: It is my will and I hereby direct that my executors shall keep the property bequeathed and devised to them in trust in item fourth of this will invested in such manner as they shall unanimously agree upon, and shall first pay out of the revenue therefrom all taxes, insurance, repairs charged against the real estate described in item third of this will, and the balance of said revenues they shall pay to my said wife, Pauline B. Rothschild.

"All the residue of my estate real and personal shall be held by them undistributed until after the

death of my said wife. Upon her death, all the real estate held by them, including that in which my said wife is herein granted a life estate, shall be converted into cash, and, together with all personal property held by them, shall be distributed share and share alike, to all or such of them as are surviving, or if any of them shall be deceased, leaving a child or children surviving them at the time of such distribution, then the share that would have fallen to such nephew or niece shall go to such child or children of said deceased niece or nephew, share and share alike.

"The nephews and nieces heretofore referred to in this item are (naming them)."

Item sixth of the will appoints testator's widow (who declined to serve) and the appellant executors as the executors of the will, and directs that they "shall not be required to give bond for the execution of said trust."

The eighth finding by the court related to a matter of controversy over the payment of "omitted taxes" which is not before this court, but omitting it, the further facts found by the court were as follows:

"4. That said widow Pauline B., took possession of the house and lot described in item three of said will under the provisions of said will, as tenant thereof for life, and has held possession thereof ever since the death of said testator, and there was also turned over to her by said executors, as her absolute property under the provisions of said will, all, of the personal property named in said item third thereof.

"5. That the specific bequest given to the Cleveland Hebrew Orphans' Asylum, in item second of said will, has been paid.

"6. That all of the residue of said estate is now in the hands of said plaintiffs, Joseph S. Rothschild and Nathan Rothschild, as executors of said will, and that they are holding the same under and subject to the trusts in said will created, limited and declared; that

all of said property is income producing and consists of stocks and bonds of the fair market value of $105,000; that the same produces a gross annual income of approximately $4,700 each year.

"7. That the taxes assessed against the funds and property in the hands of said executors, constituting said trust estate for general state, county and municipal purposes, has heretofore amounted to the sum of about $1,000, annually, and that in the future such taxes will amount to approximately the sum of Five Hundred Dollars, annually, and that in addition to said taxes large sums of money will be necessarily expended by said executors in administering said trusts created, limited and declared in said will, and executing said will, by way of executors' charges, counsel fees, court costs, and other expenses, incident to the administration of said trust. * * *

"9. That the whole estate and property of said testator now in the hands of said executors is covered by the trusts, created, limited and declared in said will, and constitutes a part of said trust fund and estate, and that said executors do not have in their hands or under their control nor is there in said estate any property whatsoever of any kind or nature whatsoever except that which is covered by the trusts so created, limited and declared in said will, and which constitutes said trust fund and estate.

"10. That said executors have been required to file a report of their doings as such executors, in this circuit court, in the matter of said estate, but that doubts have arisen as to whether the assessment of approximately $2,800 levied and made against said executors for taxes on account of said omitted property, should be paid from the principal and corpus of said trust fund or estate, or from the incomes derived therefrom, and as to whether the general state, county and municipal taxes

levied upon said trust fund and property since the death of said testator, and which may be levied and assessed in the future, shall be paid from the principal or corpus of said trust fund, or from the incomes derived therefrom, and as to whether the fees due said executors, their counsel fees, the court costs, and other expenses heretofore incurred, and which may be incurred from time to time, in the future in, and incident to, the administration and execution of the trusts created, limited and declared in said will, shall be paid from the principal or corpus of said trust fund or from the incomes derived therefrom, and as to whether, in rendering their accounts as such executors said taxes and expenses or any part thereof shall be chargeable against, and payable from said incomes, or the whole or any part thereof shall be chargeable against and payable from the principal and corpus of said trust fund and estate, and that by reason of said doubts said executors can not safely proceed with the administration of said trust or the discharge of their duties as such executors, or file their report, until the true meaning and construction of said will is judicially determined, and that said executors now have in their hands a large sum of money derived as incomes from said estate which they can not safely pay out until it is first judicially determined whether said taxes and expenses of administration or any part thereof is payable from said incomes, or from the corpus or principal of said estate."

The first conclusion of law related to the payment of "omitted taxes," and the exception thereto has been expressly waived, and the fourth declared the right to have the will construed, to which no exception was taken. The second, third and fifth conclusions, to which appellants reserved exceptions, were as follows:

"2. That the general state, county and municipal taxes levied and assessed by the public authority upon

the trust fund and estate in the hands, and under the control of said executors, is payable from and chargeable against the principal or corpus of said trust fund and property in the hands and under the control of said executors, and that no part thereof is chargeable against or payable from the incomes derived from said trust estate and property, except that the taxes levied and assessed against the real estate described in item third of said will are payable from and chargeable against said incomes.

"3. That the fees due the executors, attorneys' fees, court costs, and other costs and expenses incurred in or incident to the execution of the trusts created, limited and declared in said will are payable from and chargeable against the principal or corpus of said trust fund and property, and that no part thereof is chargeable or payable from the incomes derived from said trust fund and estate, except that the premiums paid for insurance upon the real estate described in item third of said will, repairs upon the buildings and structures upon said real estate, and assessments of any kind which shall be charged against said real estate, are chargeable against and payable from said incomes.  *  *  *

"5. That the defendant is entitled to judgment for costs herein against the plaintiffs, Joseph S. Rothschild and Nathan Rothschild, executors of the last will and testament of Aaron Rothschild, deceased."

The two questions presented for decision are: (1) Whether the current taxes on the assets of the estate are payable out of the current income, before the "balance of said revenue" remaining after payment of the taxes, insurance, repairs and assessments on the house and lot, devised to the widow for life, are paid over to the widow, or must be paid out of the body of the estate, leaving the undiminished "revenues" for the widow; and (2) whether the current income is chargeable with the

costs and expenses incurred in or incident to the execution of the trusts created by the will, and whether they are payable out of net income, before the "balance" is paid over to the widow, or whether these, also, must be paid out of the body of the estate.

In the case cited below the will directed that $3,000 should be loaned "for the benefit of" the testator's sister "during her natural life," at the best rate of interest that could be obtained, "said interest to be paid over to my said sister Josephine as soon as collected, to be used and enjoyed by her as her absolute property," and directed that at the sister's death the principal sum and any interest not due or paid over to her should "remain in my estate for distribution," and gave the residue of the estate to the testator's wife and daughter, subject to a condition that if the daughter should die without issue before reaching the age of twenty-one years, the payment of said interest should cease, and the estate be divided between testator's sister and his wife, in proportions as stated, "said $3,000 to be distributed as part of my estate." This court held that the testator's sister was entitled to all the interest on the $3,000 fund, without any reduction on account of taxes paid on the fund. The court reasoned that, since the interest on the fund was given to the sister "as soon as collected," and also "as her absolute property," and because the taxes were not assessed upon the interest, but upon the trust fund itself, "from which it (the interest) springs, and belonging to somebody else," therefore the sister was entitled to all of such interest, without deduction of taxes, because it could not be her "absolute property" if it were subject to be diminished by the payment of taxes "on some other person's property." *Wilson, Admr.,* v. *White* (1893), 133 Ind. 614, 33 N. E. 361, 19 L. R. A. 581. In that case the court cited and declared its purpose to follow cases in which the courts of Vermont

and Massachusetts, respectively, had held that the language of the wills therein construed showed a testamentary intent that the person to whom was bequeathed the "interest" on a trust fund should have an annuity, or "annual sum for life," out of the estate, equal to the "whole interest and income" of the amount of the trust fund (as one of the wills expressed it). *In re Cushing's Will* (1886), 58 Vt. 393, 5 Atl. 186; *Swett* v. *Boston* (1836), 18 Pick. (Mass.) 123.

And in the case of *Wilson, Admr.,* v. *White, supra,* much stress was put upon the word "absolute," as used in the expression that the interest on $3,000 should be paid to the sister "to be used and enjoyed by her as her absolute property," the court saying: "The word absolute is defined by Webster to mean, 1st, Loosed from any limitation or condition; uncontrolled; unrestricted; unconditional. 2. Complete in itself; perfect; consummate; faultless. Then the testator has said that said interest shall be her property to enjoy unconditionally, perfectly, unrestrictedly, loosed from any limitation or condition whatever. It must be conceded that no one can own property so perfectly and unconditionally as to free the same from the payment of taxes assessed thereon. And the fact that property is subject to taxation and liable to be sold away from the owner to pay such taxes as are levied and assessed thereon does not make the title of the owner any less absolute, perfect, unconditional, or unrestricted; but if one's property is made subject to the payment of taxes levied and assessed on some other person's property, that would make such one's title to his property imperfect, conditional, subject to a limitation and restriction, incomplete, faulty, not absolute and not consummate. And that is the condition to which appellant's contention would subject Josephine White's title to the bequest in her brother's will. The contention is that it is liable for the payment

of taxes not upon itself, but upon property from which it springs, and belonging to somebody else." ·

The foregoing is the only authority cited by counsel for the appellee in support of the judgment appealed from. And we have found only one other case in which a bequest of interest during life, on a fund set apart out of the estate, was held to require that the taxes on such fund should be paid otherwise than out of the income therefrom. That case was decided upon the sole authority of *Wilson, Admr.,* v. *White, supra. Crater* v. *Ryan* (1902), 130 N. C. 618, 41 S. E. 800.

In the case at bar, instead of interest on a separate fund set apart from the estate, the bequest was of all the "balance of the revenues" from the property of the entire estate, after payment of taxes, insurance, repairs and assessments on the residence property, devised to the wife for life. And there were no such qualifying words as that the wife should have the "whole" income, or that the money should be paid over "as soon as collected," or that the revenues should be her "absolute property." In this case the taxes and expenses of administering the trust cannot be paid out of the income from another part of the estate, as was done in most of the cases cited above, because appellee is given all the "balance of the revenues" from the whole estate, and the taxes and expenses can only be paid out of the principal fund from which the income is derived, and which is given, at appellee's death to the appellants. And if it is paid out of the principal fund the amount of the trust fund must be diminished each year in the amount paid for taxes and expenses of administering it, so long as the widow lives.

The established rule is that where real estate, or the income from real estate, is devised to trustees to

1. pay over the income therefrom to a person for life, such person is entitled only to the net in-

come, after payment of taxes, repairs and the expense of administering the trust, unless the will contains a provision to the contrary. *Nation* v. *Green, Exr.* (1919), 188 Ind. 697, 709, 123 N. E. 163; *Parish* v. *Camplin* (1894), 139 Ind. 1, 15, 37 N. E. 607; *Figgins* v. *Figgins* (1913), 53 Ind. App. 43, 46, 101 N. E. 110; 16 Cyc 632.

The overwhelming weight of authority is to the effect that the same rule applies to a bequest of the income from money or personal property for life, with remainder over, and that in the absence of anything in the will manifesting an intent that the taxes and expenses of administration shall be paid out of a different fund, or that the life beneficiary shall receive the interest or income without the deduction of such items, the taxes and legitimate costs and expenses of administering the trust shall be first paid out of the income, and only the net balance paid to the life tenant. *Stone* v. *Littlefield* (1890), 151 Mass. 485, 24 N. E. 592; *Goodwin* v. *McGaughey* (1909), 108 Minn. 248, 122 N. W. 6; *Whitson* v. *Whitson* (1873), 53 N. Y. 479; *Matter of Albertson* (1889), 113 N. Y. 434, 21 N. E. 117; *Andrews* v. *Boyd* (1828), 5 Me. (Greenl.) 169, 172; *In re Archer's Estate* (1892), 23 N. Y. Supp. 1041, 1044; *Stahl* v. *Schwartz* (1914), 81 Wash. 293, 142 Pac. 651; *Caperton's Exrx.,* v. *Todd* (1911), 142 Ky. 611, 134 S. W. 1163; *Lansing* v. *Lansing* (1865), 45 Barb. (N. Y.) 182, Id., 31 How. Pr. 55; Id., 1 Abb. Pr. (N. S.) 280; *Watts* v. *Howard* (1844), 7 Metc. (Mass.) 478-482; *Spangler* v. *York County* (1850), 13 Penn. St. 322; *Clark* v. *Foster* (1844), 8 Metc. (Mass.) 568; *Arnold* v. *Mower* (1861), 49 Me. 561; *Cadmus* v. *Combes* (1883), 37 N. J. Eq. 264; *In re Tuttle* (1892), 49 N. J. Eq. 259, 24 Atl. 1; *Holcombe* v. *Holcombe* (1876), 27 N. J. Eq. 473, Id., 29 N. J. Eq. 599; *Holmes* v. *Taber* (1864), 9 Allen (Mass.) 246; *Boggs, Admr.,* v. *Taylor*

(1876), 29 Ohio St. 172; *Defreese* v. *Lake* (1896), 109 Mich. 415, 67 N. W. 505, 63 Am. St. 584, 32 L. R. A. 744, 755, See Note X "Devise of Income."

Where an established rule of law has annexed a definite meaning to the language used in a will or contract, it is as if such legal interpretation of the language so used were written therein at length.

3. And in the absence of a clear expression in this will of contrary intent, it must be understood as though it expressly provided for the payment of current taxes and expenses of administration out of income, before the "balance of revenue" is paid to the appellee.

Counsel for appellee have not favored the court with any argument, except the general assertion that the provisions contained in the will that the executors shall keep the trust property invested, and "shall first pay out of the revenue therefrom all taxes, insurance, repairs and assessments of any kind which shall be charged against the real estate (devised to the wife for life), and the balance of said revenues they shall pay to my said wife," say in express terms (they insist) that such revenues shall all go to the widow, without deduction of taxes or charges, and that the language of the will admits of no other interpretation. In this counsel are mistaken. Under all the authorities we have been able to find, with the single exception of *Crater* v. *Ryan, supra,* such a devise of "the revenues" from invested funds refers to the income realized from such investments after payment of legal charges for taxes and costs of administering the trusts. And it is only where other language of the will expresses an intention to devise the income, without diminution on account of such charges, as in *Wilson; Admr.,* v. *White, supra,* and the cases cited therein from Vermont and Massachusetts, that such taxes and charges are otherwise payable.

The appellants joined in a petition for the construc-

tion of this will, and the appellee answered by a general denial.   A demand that the court should give any particular construction to the will was not a necessary part of such petition, and the answer only joined issue on the question whether or not the will ought to be construed, and not whether it should receive the construction suggested by the complaint.   *Hawes* v. *Kepley* (1902), 28 Ind. App. 306, 309, 310, 62 N. E. 720.   Upon this issue the circuit court expressly found in favor of the appellants, and against the appellee, that cause existed for a judicial construction of the will, and gave it a construction.   The costs should therefore be adjudged against the appellee. §617 Burns 1914, §590 R. S. 1881.

Since the judgment for costs against the executors is payable out of the estate belonging to the appellants, subject only to appellee's life interest therein, appellants were entitled to attack it by their exceptions and appeal.

The exceptions of appellants to each of the second, third and fifth conclusions of law were well taken.

The judgment is reversed, with costs, and the cause is remanded, with directions to the circuit court to restate its conclusions of law in accordance with this opinion and to render judgment thereon.

Townsend, C. J., and Travis, J., dissent.

### DISSENTING OPINION.

TOWNSEND, C. J.—The writer cannot assent to the majority opinion.   The fifth item of the will provides that the executors "shall *first* pay out of the revenues therefrom all taxes, insurance, repairs charged against the real estate described in Item Third of this will, and the *balance* of said revenues they shall pay to my said wife."

Now item third creates a life estate. Testator's wife was therefore bound to pay "all taxes, insurance, repairs charged against" this real estate. Testator's words in this behalf must be given some meaning. By directing his executors to do something which the life tenant was required in law to do, and by thus striking a "balance," testator indicated his intention that this should be the only net balance struck. That the corpus of the estate will be slightly diminished is not appalling. It is certainly not unnatural that testator should give enough so that his wife might have an estate of her own.

The case of *Wilson, Admr.*, v. *White* (1893), 133 Ind. 614, 33 N. E. 361, 19 L. R. A. 581, is distinguished in the principal opinion and stress is laid on the words "absolute property." To the writer the words of the will in the present case are as strongly, or even more strongly, indicative of "absolute property" than those in the Wilson case. When testator struck a balance by his words, he absolved the fund from all other charges. The writer agrees with the law contained in the cases cited in the principal opinion, but disagrees with the manner of its application to the present case.

The judgment of the trial court should be affirmed.

Travis, J., concurs in the dissenting opinion.