CUNNINGHAM, ADMINISTRATOR *v.* NEW YORK CENTRAL RAILROAD COMPANY.

[No. 17,088. Filed May 4, 1943. Rehearing denied June 1, 1943. Petition to transfer withdrawn October 22, 1943.]

92

*Cunningham & Shandy*, of Kentland, and *Bomberger, Peters & Morthland*, of Hammond, for appellant.

*Sammons & Sammons*, of Kentland, and *Abraham Halleck*, of Rensselaer, for appellee.

DRAPER, J.—This was a suit for damages commenced by appellant's decedent, Jennie M. Conrad, based upon the alleged breach of a covenant to maintain a railroad station on lands conveyed by her for that purpose. The appeal is from a judgment upon a verdict for the appellee returned at the close of all the evidence by peremptory instruction.

The substituted complaint alleged appellant's appointment as administrator and that on March 27, 1905, Mrs. Conrad, then owner of five thousand acres of land in Newton County, contracted in writing with The Indiana Harbor Railroad Company through C. W. Hotchkiss, its president, to convey to it a 100-foot right of way four miles long through her land, together with six acres for station purposes in consideration of its promise to erect and maintain a station thereon, together with certain switches and stock pens. That pursuant to said agreement, the lands were deeded, the railroad constructed, the station erected and named Conrad and that it was maintained by appellee, successor to The Indiana Harbor Railroad Company by various consolidations, until March 1, 1939, when the station was closed and abandoned.

The appellee in its first paragraph of answer admitted the foregoing. Its second paragraph alleged the maintenance of the station for thirty-three years and that by such maintenance the consideration for the land con-

veyed was fully paid.  The third paragraph alleged that the abandonment was authorized by the Public Service Commission of Indiana and the fourth alleged that the appellee could not further comply with any agreement to maintain the station and at the same time discharge its duty to the public.

By stipulation and evidence introduced at the trial the facts alleged in the complaint were admitted or proven and the appellant introduced evidence to prove the amount of damage suffered.  Evidence was also introduced to prove that Mrs. Conrad at her death still owned about three thousand acres of land surrounding the station and that the station was abandoned without her consent.  The appellee offered evidence to the effect that the abandonment had not damaged appellant's decedent and that the revenue from the station had by 1939 fallen to practically nothing.

Both parties agree that the case involves a covenant rather than a condition subsequent and that no question of forfeiture or any right thereto is involved.

It was held in the case of *Louisville, New Albany & Chicago Railway Co.* v. *Sumner* (1886), 106 Ind. 55, 5 N. E. 404, 55 Am. Rep. 719, that a covenant similar to that under consideration, contained in a deed conveying land to a railway company is not void as being against public policy and that an action for damages would lie for the breach thereof.  In that case the defense of substantial compliance did not arise since the depot was never erected.

Conditions subsequent, having the effect in case of a breach to defeat estates already vested, are not favored in law, and hence always receive a strict construction.  *Hunt* v. *Beeson* (1862), 18 Ind. 380; *Jeffersonville, Madison and Indianapolis Railroad Company et al.* v. *Barbour et al.* (1883), 89 Ind.

375; *Sheets et al.* v. *Vandalia Railway Company* (1921), 74 Ind. App. 597, 127 N. E. 609, and it has been held in this State that the erection and maintenance of a depot upon the land conveyed, for a long period of years, is a substantial compliance with such a condition. *Jeffersonville, Madison and Indianapolis Railroad Company et al.* v. *Barbour et al., supra; Sheets et al.* v. *Vandalia Railway Company, supra; Cleveland, Cincinnati, Chicago and St. Louis Railway Company* v. *Cross et al.* (1928), 87 Ind. App. 574, 162 N. E. 253.

Applying the rule of strict construction it was held in *Jeffersonville, Madison and Indianapolis Railroad Company et al.* v. *Barbour et al., supra,* in a case where property was deeded for depot purposes, but no time was fixed for the occupancy thereof for such purposes, that the parties must have intended that the occupancy should be for a reasonable time, that the railroad was not required for all time to come to use the premises for such purposes and the court said at p. 378, "Had the grantors intended that the lot should be occupied by the railroad for all time to come for depot purposes, words suitable to express such intention would have been employed," and it is held in a majority of jurisdictions, though not in all, that in the absence of a provision specifying a term of years or perpetuity, such a covenant or condition subsequent does not require operation in perpetuity, or forever, but is complied with by performance covering a long term of years. *Scheller, Adm.* v. *Tacoma Ry. & Power Co.* (1919), 108 Wash. 348, 184 P. 344, 7 A. L. R. 810, and note.

The text writers do not differentiate between covenants and conditions in their treatment of the subject and there are many cases involving covenants which apply the rule of substantial compliance in cases similar to this. *Louisville & N. R. Co.* v. *Johnson's Admx.*

(1925), 207 Ky. 813, 270 S. W. 58; *Scheller, Adm.* v. *Tacoma Ry. & Power Co., supra; Maryland and Pennsylvania R. Co.* v. *Silver* (1909), 110 Md. 510, 73 A. 297; *Texas etc. Ry. Co.* v. *Marshall* (1890), 136 U. S. 393, 10 S. Ct. 846, 34 L. Ed. 385; *Whalen et al.* v. *Baltimore & O. R. Co.* (1910), 112 Md. 187, 76 A. 166; *Texas & P. Ry. Co.* v. *Scott* (1896), 77 F. 726, 37 L. R. A. 94.

Most of the cases adhering to the majority rule either use or quote with approval language to the effect that a covenant or condition of the kind under consideration is fairly complied with by the erection and maintenance of a station for a long period of years, and until the exigencies of business, the convenience of the public and the welfare of the railroad demand its removal, and it appears to us that this is the correct rule. It is based upon the theory that such a covenant or condition is presumed to be made subject to the exigencies of the company's further development, the general contingencies of business, the public interest and the continuing development of transportation routes. *Texas & P. Ry. Co.* v. *Scott, supra; Whalen et al.* v. *Baltimore & O. R. Co., supra; Scheller, Adm.* v. *Tacoma Ry. & Power Co., supra.*

In the case of *Sheets et al.* v. *Vandalia Railway Company, supra,* McMahan, J., speaking for this court, although dealing with a condition and not a covenant, cites with approval at p. 617 the case of *Maryland and Pennsylvania R. Co.* v. *Silver, supra,* and says, with regard to the conveyance under consideration in the Sheets case, "Such conveyance was undoubtedly made subject to the general exigencies of business and public interest, and the change, modification and growth of transportation routes as this may affect the require-

ments of the railway company's business," citing *Railway Co. v. Birnie* (1894), 59 Ark. 66, 26 S. W. 528.

The company may not willfully and arbitrarily refuse to maintain a public station at any place on its line, when it has legally obligated itself to do so, ■ *Maryland and Pennsylvania R. Co. v. Silver, supra,* nor will the fact alone that the company is losing money permit it to escape obligations voluntarily assumed. *Fort Smith Light & Traction Co. v. Bourland et al.,* 267 U. S. 330, 45 S. Ct. Rep. 249, 69 L. Ed. 631.

Having determined upon the rule, we proceed to apply it to the facts in the instant case. As said by the court in *Jeffersonville, Madison and Indianapolis Railroad Company et al. v. Barbour et al., supra* (89 Ind. 379), in discussing a condition subsequent, "It is not, under the circumstances, unreasonable to suppose that the grantors received, in the occupancy of the lot as depot grounds for thirty years, all the benefits and advantages which they anticipated when they made the conveyance.

"In determining whether a condition subsequent in a deed has been broken or not, construction is required in nearly every case. But little assistance can be had from examining other cases, except to ascertain rules for interpretation. Each case differs so widely from all others that even rules of construction cannot be wholly depended upon. The application of good sense and sound equity are as much to be relied upon as subtle and artificial rules of construction. The point, of course, to be arrived at in every case, is to ascertain the intention of the parties. And we may suppose in this case, from the language of the deed and the surrounding circumstances of the transaction, so far as they are

disclosed in the complaint, that the grantors' object in the conveyance was satisfied in the occupancy of the premises by the railroad, for depot purposes, for a period of time nearly equal in duration to the average of human life."

In this case the evidence discloses that after the operation of this station for thirty-two years it is still surrounded by cultivated fields, woods and pasture land; that the land is largely sandy with considerable blow sand and somewhat grown up with scrub oaks; that the land adjacent to the station was sometime platted as the town of Conrad and at the time of her death Mrs. Conrad still owned all but five lots in the townsite, and of the five, three were in the name of one person, and none of these five appear to have been improved; that U. S. highway number 41 has been laid parallel to the land in question and is used for the shipment of grain and cattle; that there is no elevator at Conrad and grain for shipment is handled at another place. The highest value put upon the Conrad land which surrounded the station was an estimated $22.00 per acre with the station operating, and one of appellant's witnesses valued it as low as $17.00 per acre with the station operating; that the company operates a non-agency station at Lake Village, three miles away. The evidence further discloses that the Public Service Commission of Indiana, basing its order upon the fact that there were but two dwellings and no stores or industries at Conrad, that there were but twenty families within a radius of two miles thereof, that the business handled at Conrad has dwindled to near the vanishing point; that of the business handled at Conrad ninety per cent originated at Lake Village, and other facts, found that public convenience and necessity no longer required an

agency station at Conrad and that with the establishment of an agency station at Lake Village, as required of the Company upon abandonment of Conrad, the public will be more adequately served.

We do not hold that the permissive order of the Public Service Commission of Indiana justified the abandonment of the station so as to relieve the appellee from liability for damages, but we do hold that the evidence wholly fails to disclose a willful or arbitrary refusal on the part of the appellee to continue the operation thereof and that the abandonment of the station after thirty-two years, in the light of the circumstances surrounding the abandonment, did not constitute a breach of the covenant but on the contrary amounted to a substantial compliance therewith.

But one other question remains for discussion. A letter written to Mrs. Conrad by C. W. Hotchkiss on December 26, 1907, on the stationery of appellee's predecessor in title and operation of the road, advised her, among other things, in apparent response to a letter written by her to him, that "we shall not now or any other time abandon Conrad, and I should not allow myself to be annoyed by the idle chatter of a county newspaper man. . . . So you need have no fear of abandonment of your interest by the railroad or myself, personally. I will endeavor to see that you are fairly treated so long as I remain with the Company, which, I trust, will be for many years." And the appellant insists that this letter should have been received in evidence upon the theory that it evidenced the company's construction of the agreement of the parties to require maintenance of the station in perpetuity.

In the interpretation of a written instrument whose language is ambiguous or equivocal, weight should be

given to the subsequent acts of the parties as indicating what construction they placed upon it. *Portland Body Works* v. *McCullough Motor Supply Co.* (1920), 72 Ind. App. 216, 119 N. E. 180, 119 N. E. 1005. But where words or terms having a definite legal meaning and effect are knowingly used in a written instrument, the parties thereto will be presumed to have intended such words or terms to have their proper legal meaning and effect, in the absence of any contrary intention appearing in the instrument. *Rothschild et al., Executors* v. *Weinthel* (1921), 191 Ind. 85, 131 N. E. 917, 132 N. E. 687.

In the light of the decisions referred to in this opinion we believe that the phrase "erect and maintain" as used in connection with covenants to erect and maintain railway stations at lease, has a well defined meaning which must control. In addition to the foregoing we do not construe the letter as evidencing an interpretation of the agreement, but rather as the expression of a then present intention, unrelated thereto, not to abandon the station. We find nothing in the language of it to sustain appellant's contention that the company admitted itself to be bound by the agreement to occupy the premises for station purposes in perpetuity and forever. Indeed the letter could not clarify the agreement, for it seems to us that its meaning, in the absence of the letter which it answers, is more obscure than that of the agreement itself. To paraphrase the language of Judge Hammond, as quoted from the case of *Jeffersonville, Madison and Indianapolis Railroad Company et al.* v. *Barbour et al., supra,* "Had the company intended to occupy the lot for all time to come for railroad purposes, words suitable to express such intention would have been employed."

It is insisted that the appellee had the burden of proving substantial compliance with the covenant and that the court erred in taking the case from the jury. A verdict should not be directed in favor of the party having the burden of the issue when the verdict must be based wholly or partially on the testimony of the witnesses. *Jacobs, Administratrix* v. *Jolley et al.* (1902), 29 Ind. App. 25, 62 N.E. 1028, and it is said in *Haughton* v. *Aetna Life Insurance Company* (1905), 165 Ind. 32, 40, 73 N. E. 592, 74 N. E. 613, that "Where the facts are admitted by the pleadings or otherwise, or when the evidence upon the controlling question is documentary, and its interpretation and construction a matter for the court, and but one conclusion reasonably deducible therefrom, then in such cases the court may, as a matter of law, direct a verdict in accordance with the evident facts, and in favor of the party having the affirmative of the issue.

"But where a determination of the issues involves the credibility of witnesses, and rests upon inferences and deductions being drawn from the facts proved, it will be an invasion of the province of the jury for the court to direct a verdict." The evidence, other than on the question of damages, is undisputed. But one witness, other than those who testified as to land values, testified for appellee and his testimony was entirely favorable to the appellee. The evidence above detailed includes none of his testimony but instead these facts were all either proven or stipulated by the appellant, with the exception of a certified copy of the order of the Public Service Commission which was offered by the appellee, and the probity of which was not questioned. Had the action of the court necessarily rested upon the testimony of the one witness, or any part of it, a different question would be presented. Upon the

whole record we find no evidence showing a cause of action in the appellant and the court did not err in directing a verdict. *Dodge* v. *Gaylord et al.* (1876), 53 Ind. 365; *Vance et al.* v. *Vance et al.* (1881), 74 Ind. 370; *The City of Plymouth* v. *Milner* (1889), 117 Ind. 324, 20 N. E. 235; *Engrer* v. *Ohio and Mississippi Railway Co.* (1895), 142 Ind. 618, 42 N. E. 217.

Judgment affirmed.

NOTE.—Reported in 48 N. E. (2d) 176.