## Elkhorn & Beaver Valley Railway Company v. Dingus.

(Decided April 27, 1920.)

### Appeal from Floyd Circuit Court.

1. Railroads—Conveyances to Railroads—Failure to Comply with
   Contract—Measure of Damages.—Where one conveys to a railroad
   company, a portion of a tract of land, for a right of way for the
   railroad, and the consideration of the conveyance is that the
   railroad company will erect and maintain a depot upon the land
   conveyed to it, and establish a stopping place for its trains
   thereon, upon its failure to comply with its contract by the erec-
   tion of a depot, the measure of damages to which the one, who
   conveyed the land is entitled, is the difference between the
   fair market value of the residue of the land owned by him at
   such place, without a depot, at the time the depot should have
   been erected, and what its fair market value would have been,
   if a depot had been erected and maintained.

2. Railroads—Contract for Right of Way—Measure of Damages.—
   Under a contract between the vendor of a right of way for a rail-
   road company and the company, in consideration of the convey-
   ance, the company covenants to build a depot upon the land
   conveyed, and builds a depot, but not such a one as the contract
   provides for, the damages suffered by the vendor is the differ-
   ence between the market value of the residue of his lands with
   the depot, which was erected, and what their market value would
   be, with such a depot thereon, as the contract provided for.

3. Railroads—Consideration for Conveyance—Failure to Erect Depot
   as Provided—Damages.—Where in consideration of the convey-
   ance of a portion of a tract of land to a railroad company, the
   company agrees to erect and maintain a depot upon the land,
   and does erect such a depot as is agreed upon, but not within
   the time provided for by the contract, the damages suffered by
   the owner of the residue of the lands is the loss sustained by
   him from the time the depot should have been erected, until it
   was built.

4. Railroads—Contract for Erection of Depot.—Under a contract, by
   which a railroad company, receives a conveyance of a portion of
   its right of way, in consideration of the erection by it of a depot

upon the lands conveyed, without any stipulation as to the time, when it will erect the depot, it is an agreement on its part, to erect a depot, within such a time as is reasonably necessary for the purpose, after the completion of its road, so that trains may operate thereon.

5. Railroads—Conveyance in Consideration of Erection of Depot.—Under a contract by which a railroad company receives a conveyance of a portion of its right of way, in consideration that it will erect a depot upon the land conveyed, in the absence of any stipulations as to the style or dimensions of the depot to be erected, it is a covenant to erect a depot, which will be reasonably adequate for the accommodation of the normal number of passengers and the transaction of the normal freight business, at such place, in the ordinary and usual way, in which a depot is made use of for such purposes.

HARKINS & HARKINS and WORTHINGTON, COCHRAN & BROWNING for appellant.

WILLIAM DINGUS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This appeal is from a judgment in favor of the appellee, D. C. Dingus, against the appellant, Elkhorn and Beaver Valley Railway Company, for an alleged breach by the latter of a contract, which it had entered into with the former for the erection and maintenance of a depot upon its line of railroad, between Beaver Creek and Wayland, upon a parcel of land, which had been conveyed to the Railway Company by Dingus. Dingus owned a tract of land at the place and the parcel conveyed by him was a portion of the tract and was conveyed to the railway company for a right-of-way over which it proposed to construct and operate its railroad and upon which to erect and maintain a depot and necessarily to make a stopping place for its trains. The deed by which the conveyance was made was executed in the year 1911 and the consideration for its execution recited was "one dollar and other good and valuable considerations." The deed, also, contained the following stipulations: "The Elkhorn and Beaver Valley Railway Company agrees to build a depot on the strip of land herein conveyed," and, "It is understood that the foregoing strip or parcel of land is purchased for the purpose of *construction* and operating thereon a standard gauge railroad and facilities appurtenant thereto." The habendum contained a clause of general warranty.

The action was begun on the 21st day of April, 1915, by a petition, which averred, that the railway company, as the consideration for the sale and conveyance of the strip of land, covenanted, that, as soon as its road was built and cars operating thereon, it would erect a depot upon the land conveyed, and make a stopping place thereon for its trains and maintain same thereafter. It was, also, averred that, although the railway company had long since constructed its road' over the land and had been operating its trains thereon for more than a year, it had wholly failed to comply with its contract to erect and maintain a depot upon the land, and by reason of its failure so to do, he, Dingus, had suffered large damages in the loss of the enhanced value, which would have accrued to the residue of his lands from the erection and maintenance of the depot. The railway admitted its obligation to erect and maintain a depot upon the land conveyed to it, but denied that it had failed to do so within the time provided by the contract for the erection of the depot, or that the residue of the lands of Dingus had failed to appreciate in value on that account, or that he had suffered any damages; but, affirmatively alleged that it had fully complied with the contract by the erection of a depot upon the land within a reasonable time after the construction of its road. Dingus by a reply admitted that after the institution of his action the railway company had pretendedly, only, complied with its contract by the erection of a depot, but, averred that the building was too small, temporary, inadequate, and not such a depot as was contemplated by the contract, and therefore denied that the railway company had complied with the contract.

The trial resulted in a verdict by the jury in favor of Dingus and a judgment in accordance therewith. The railway company's motion for a new trial being overruled, it seeks a reversal of the judgment upon several grounds of which it is not necessary to consider any, except its contention that the court erred to its prejudice in giving and refusing instructions to the jury and in the admission of incompetent evidence against it upon the trial.

(a)   The instructions of the court to the jury were erroneous, in that they submitted issues which did not exist, either in the pleadings or in the evidence. They were furthermore so drawn as to submit to the jury and

leave it to determine for itself what the contract was, as well as what constituted a breach of it, and thus left to the jury to determine what the law of the case was, as well as the facts. The instruction by which it was attempted to define the measure of damages was involved, confusing, and misleading, and applied only to the measure of damages in such character of a case, when there is no issue made as to whether the railroad company has complied with the contract by the erection of a depot. The railway company offered an instruction covering and defining the measure of damages when a railroad company has erected a depot as agreed upon, but not within the time provided for by the contract, and while the instruction offered was not correct, and was properly refused, the duty then devolved upon the court to give a correct instruction upon the subject. Taylor Sons Co. v. Hunt, 163 Ky. 120; Chicago Veneer Co. v. Jones, 143 Ky. 26; L. & N. R. R. Co. v. Harrod, 115 Ky. 877; L. H. & St. L. R. Co. v. Roberts, 144 Ky. 820.

To determine what the instructions should have been, it is necessary to consider the facts which the evidence conduced to prove. The construction of the railroad began in the early part of the year 1913, but there is a conflict of testimony as to when it arrived at such a state of completion that trains were operated over it carrying passengers and freight. The testimony offered by Dingus tended to prove that trains began to pass over the road in the latter part of 1913, or in the early part of 1914, while the evidence for the railway company was to the effect that the road was not completed for the operation of trains until July 1st, 1914. No pretense was made by the railway company of the erection of a depot upon the land conveyed to it by Dingus until the 5th day of June, 1915, when it let a contract for that purpose, and the building which the railway company now insists was the one which it had contracted to erect, was built during the months of June and July, 1915. An agent was not maintained at the depot for some months after its erection, the door was not kept locked, and any one could enter at his pleasure. The building was sixteen (16) feet in width and twenty-four (24) feet in length, and after a time it was separated into two rooms by a partition wall, one of which rooms was used as a ticket office, and the other for a waiting room, and freights could not be put into it at all, but two box cars

were placed in close proximity to the building and were used as receptacles for freights, and such were the conditions at the time of the trial. The railway company insists that the building, and the box cars provided by it, fully complies with its contract, and indicates no purpose of making any further provision for a depot. The evidence is conflicting as to whether the building is adequate for the accommodation of the normal number of passengers and the transaction of the normal freight business at the place. As used by the railway company freights are not stored in the building at all. The evidence is, also, contradictory, as to whether an enhancement of the value of the lands was prevented by the failure of the railway company to erect a depot adequate to the demands of the passenger and freight business at the place.

The contract did not express any time within which the railway company should erect a depot, and neither did it define the style or dimensions of the depot, which was agreed to be erected and maintained. As no reason would exist for a depot unless and until the railroad was so completed, that trains could be operated over it, it must be concluded that the parties intended by the contract, that the depot should be erected within a reasonable time after the operation of trains began over the road, and that it should be maintained thereafter. In the absence of any stipulation in the contract, as to the style and dimensions of the depot, the parties in making the contract must have contemplated that it should be such a depot as was suitable and adequate for the reasonable requirements of the normal passenger and freight business at the station where the depot was to be situated. In Ecton v. Lexington & Eastern Ry. Co., 59 S. W. 864, in considering a similar question this court said: "A deed providing that the grantee railroad should establish and maintain a station on the land conveyed and erect a depot thereon, imports that the company will build such a depot and maintain such a station as is fairly adequate to the business to be done at the place and this depends on many circumstances, etc. . . ."

Where a landowner conveys a portion of a tract of land to a railroad company in consideration of the agreement of the latter, to construct its railroad over and to erect and maintain a depot on the land conveyed to it, which necessarily includes the establishment of a

stopping place for the trains at such a depot, and the railroad company accepts the conveyance and constructs its railroad over the land conveyed to it, but wholly fails to erect and maintain a depot thereon at the place agreed upon, the damages to which the landowner is entitled for the breach of the contract is the loss which he sustains on account of such breach and the loss sustained is the difference between the market value of the portion of the tract of land owned by him at the time of the breach and what the market value of the lands would be, if the depot had been erected thereon. L. H. & St. L. Ry. Co. v. Baskett, 121 S. W. 957; Same v. Same, 104 S. W. 695; L. & P. V. Elec. Ry. Co. v. Whipps, 118 Ky. 121; Sedgewick on Damages V. 2 Sec. 630; Sutherland V. 2 Sec. 576. In Louisville, etc., R. R. Co. v. Neafus, 93 Ky. 57, it was held that the owner was entitled to recover for the value of the land conveyed by him to the railroad company where the consideration was nominal as well as for the loss of what the residue of his lands would have enhanced in value if the depot had been built, but the opinion in that case was overruled to the extent that a recovery was allowed for the value of the land conveyed to the railroad company by the opinion in L. & P. V. Elec. Ry. Co. v. Whipps, *supra,* and the measure of damages was determined to be as above stated.

It is apparent, however, that upon the issues in the instant case, that an instruction, which merely defines the measure of damages for a breach of a contract to erect and maintain a depot, where there is an entire failure to erect a depot, does not suffice. If within the time provided for by the contract the railway company had erected a depot, but, not such a one as the contract provided for, the damages suffered by Dingus would be the difference between the market value of the lands owned by him, at the place, at the time of the breach, with such a depot as was erected thereon, and what their market value would have been, with such a depot thereon as the contract provided for; and if a depot such as the contract provided for should have been erected, but not within the time required by the contract, the damages, suffered by Dingus, would have been the loss sustained by him, if anything, because of the delay in erecting the depot. L. H. & St. L. Ry. Co. v. Baskett, 104 S. W. 695. This loss would not have been the difference between what the market value of the lands were at the time, the

breach occurred, without such a depot thereon as the contract required, and what their market value would have been with such a depot, because Dingus would then receive both the damages sustained as though a depot was never erected, and the enhanced value of the lands, when the depot was erected. Hence, the instructions, which should have been and which should be given upon another trial, if the facts in proof are similar, are as follows:

(1) In accordance with the contract between the plaintiff and the defendant, it was the duty of the defendant, within such a time after the defendant completed its road, so as to operate trains, thereon, as was reasonably necessary for the purpose, to erect and maintain upon the land conveyed to defendant by plaintiff a depot, which was reasonably adequate for the accommodation of the normal number of passengers and the transaction of the normal freight business, at said place, in the ordinary and usual way in which a depot is made use of, and if the jury believes from the evidence, that the defendant failed within such a reasonable time, after the completion of its road, so as to operate trains over it, to erect and maintain such a depot as above defined; or if it erected and maintained such a depot as above defined, but, did not do so within a reasonable time for the purpose, after the completion of its road so as to operate trains thereon, the jury will find for the plaintiff, and will assess the damages, to which he is entitled, as hereinafter directed by instructions, two and three.

(2) If the jury believes and finds from the evidence, that the depot erected and maintained by the defendant was not such a depot as it was required to erect, as defined by instruction No. 1, but, was erected within the time, it was required to erect a depot, as set out in instruction No. 1, it will find for plaintiff the difference, if any, between the fair market value of the residue of the lands owned by plaintiff, at said place, at the time the depot was erected, with the depot thereon which was erected, and what the fair market value of said lands would have been, at said time, with such a depot thereon, as is defined in instruction No. 1; but, if the jury believes from the evidence that the depot erected and maintained by defendant was neither erected within the time required, nor was such a depot as required, as set out and defined in instruction No. 1, it will find for plaintiff the

difference, if any, between the fair market value of said lands, with the depot thereon which was erected, and what the fair market value of same would have been with a depot thereon as defined in instruction No. 1 and in addition thereto, a sum equal to the interest at 6% per annum from the time a depot should have been erected as set out in instruction No. 1, up to the time, the depot was erected, upon the difference, if any, between the market value of said lands, with the depot thereon, which was erected, and what the market value of said lands would have been with a depot thereon, as defined by instruction No. 1.

(3) If the jury believes and finds, from the evidence, that the depot erected and maintained by defendant was such a depot as the contract required, as defined in instruction No. 1, but, was not erected within the time required by the contract as set out in instruction No. 1, it will find for the plaintiff a sum equal to the interest at 6% per annum, from the time the depot should have been erected, as set out in instruction No. 1, to the time of the erection of said depot, upon the difference, if any, between the fair market value of the lands owned by plaintiff, at said place, without the depot, at the time the depot should have been erected, as set out in instruction No. 1, and what their fair market value would have been with said depot thereon, and no more.

(4) In any event, the damages found for plaintiff must not exceed the sum of $10,000.00, the amount claimed in the petition.

(5) If the jury believes from the evidence, that the defendant within such a time, as was reasonably necessary for the purpose after the completion of its road, so as to operate trains thereon, erected and thereafter maintained upon the land conveyed to it by defendant, a depot, which was reasonably adequate for the accommodation of the normal number of passengers and the transaction of the normal freight business, at said place, in the ordinary and usual way in which a depot is made use of, the law is for the defendant and the jury will find for it.

(6) Any number of the jurors, not less than nine may make a verdict, but, if less than the whole number make a verdict, each of those agreeing thereto should sign the verdict. If all the jurors agree to the verdict, it may be signed by any one of them.

(b)   In view of another trial, it is necessary to consider objections, which were made upon the trial to certain testimony.   It was competent for the plaintiff to prove the prices, at which he had sold the lots in the year, 1913, and thereafter, and that he sold the lots upon the representation, that the defendant had covenanted to build and maintain a depot, there, when its road should have been completed for the operation of trains, and that he exhibited to the purchasers a blue print showing the location of the lots and that of the proposed depot.   It was likewise competent for him to prove the rescission of the contracts of sale, not for the purpose of showing his losses on account of a particular sale and rescission, but, as tending to prove the market value of the lands without a depot and what they would be worth with a depot.   The proof of the rescission can be made as explanatory of the reason, why the plaintiff was the owner of the land, at the time of the alleged breach of the contract by defendant.   He may make proof of his loss of the enhancement, if any, in the market value, if any, of the lands owned by him, at that place, at the time the depot should have been erected under the contract, whether he was the owner of same by either legal or equitable title.   The sales and rescissions must, however, be proven by competent evidence for that purpose. While he cannot prove any profits which he might have made in any business he might have engaged in upon the lands, after the conveyance by him to defendant of the portion conveyed to it, he may prove the adaptation of the residue of the lands for business or other useful purposes and by which its value might be enhanced.

For the reasons stated the judgment is reversed and cause remanded for proceedings not inconsistent with this opinion.