## Louisville & Nashville Railroad Company, et al. v. Letcher County Coal and Improvement Company, et al.

(Decided May 19, 1922.)

Appeal from Letcher Circuit Court.

1. Contracts—Acceptance.—Where the owner of land submitted in writing a proposition for the sale of a portion thereof to another, and that party immediately thereafter took possession of same, wrote the owner a letter in which an acceptance of the proposi-

tion was indicated and still retains possession, a valid contract was consummated.

2. Railroads—Agreement to Build Depot—Requirements.—An agreement by the railroad company to build a good and sufficient depot at a town site laid off and being developed by the owner of the land, means a depot suitable and adequate for the reasonable requirements of the normal passenger and freight business at the station where the depot was to be situated.

3. Railroads—Construction of Depot.—Where the railroad company, in consideration of the conveyance of a depot site and adjacent rights-of-way by the owner of the surface, agreed to construct a depot on the site and pay for parts of the right-of-way, it cannot excuse a failure to construct the depot upon the ground of a failure of consideration where the owner had title and power to convey the depot site at least, and the company's possession of the depot site and rights-of-way thus acquired has never been disturbed or threatened by any one.

4. Railroads—Failure to Construct Depot—Measure of Damages.—The measure of damages for such failure to construct a depot is the difference in the value of the grantor's adjacent land with and without the depot at the place agreed upon.

5. Deeds—Mines and Minerals—Inhibitions.—A provision in a deed conveying minerals and certain surface privileges that "there is to be no mining houses nor depot on tract No. 1746 containing 11.64 acres" is not an inhibition running with the land against the use of the land for such purposes by either party, but is an exception or reservation for the benefit of the grantors, which they could subsequently convey.

6. Deeds—Champerty and Maintenance.—A deed for a depot site and rights-of-way to a railroad by the owner of the surface of the land was not champertous where the owner not only had title to the depot site at least, was in possession of both the depot site and rights-of-way, transferred same to the company and no one has ever disturbed or threatened the company's possession thus acquired.

7. Equity—Protection of Title Under Lost or Destroyed Deed.—Courts of equity have the power in the absence of statutory authority to establish and protect the title and possession of the grantee under a lost or destroyed deed, and to grant such relief as the circumstances require; and where the deed was destroyed without fault of the grantor after delivery to the grantee, but before recordation, the execution of a new deed to replace the one destroyed may be ordered, since recordation is essential to the protection of grantee's rights thereunder, but to entitle the grantee to such relief he must have previously tendered to the grantor a new deed prepared in accord with the original, together with the necessary fees and requested its execution.

8. Equity—Lost or Destroyed Deed—Relief.—Supplementary proceedings to perfect the right to such relief after rendition of judg-

ment sustaining the validity of the destroyed deed held permissible·in this case.

B. D. WARFIELD and MORGAN & HARVIE for appellants.

D. D. FIELDS, R. MONROE FIELDS, DAVID HAYS, E. C. O'REAR, WM. L. WALLACE and W. G. DEARING for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

By this action the appellees sought and recovered of the appellants damages for breach of a contract to construct a passenger and freight depot at Neon, Kentucky. The action was transferred from the common law to the equity side of the docket by agreement of parties and tried by the court as in equity without the intervention of a jury.

For reversal of the judgment the appellants insist:

1. That no contract for the construction of the depot was ever consummated;

2. That, if mistaken in this, there was a total failure of consideration, because the appellees did not own the rights-of-way and depot site they attempted to sell and for which the agreement to construct the depot was the chief consideration.

We will first dispose of these contentions in the order named, and will then refer briefly to several other minor contentions. The proof with reference to the execution of the contract is in substance as follows:

About May 1st, 1913, George Hogg, one of the appellees, and G. H. Justice, division engineer for the defendants, had a conversation in which Hogg for the appellees offered to sell, and Justice for the appellants offered to buy, the rights-of-way and depot site involved, at $300.00 an acre and the further consideration that the appellants would construct a depot upon a part of the land to be conveyed by appellees, at Neon.

It was agreed that Hogg would present this proposition to his associates and then submit same if approved by them, in writing, to Justice for final acceptance. A telegram embodying the tentative agreement was prepared by Justice and submitted by Hogg to his associates. This telegram was approved and signed by appellees after the insertion therein of the words, "a good and substantial" just before the word "depot." It was then sent to and received by Justice. Immediately thereafter the defendants took possession of the portions of the

right-of-way they had not already possessed themselves of, and constructed thereon their railroad tracks, and they have ever since retained possession of same.

On June 12th, 1913, Mr. John Howe Peyton, defendant's chief engineer of construction, wrote a letter to appellees in which, after requesting appellees to change the location of the streets in a town site they were laying off at Neon so as to give better approach to the depot site, he makes the following statement: "It is understood that the railroad company will build a depot on the property, and that you will open a road to reach the public road."

Thereafter appellants prepared and sent to appellees for execution a deed for the rights-of-way and depot site, which the appellees refused to execute because it contained a covenant of general warranty and provided for the construction by the appellants of only a freight depot. Appellants then prepared another deed with covenant of special warranty, but still providing for the construction of only a freight depot at Neon. This deed, together with a check for the cash payment, amounting to $368.00 under the agreement, was sent to appellees by appellants by their agent W. E. Graham.

The appellees inserted in the deed in the presence of Graham, the words "and passenger" between the words "freight" and "depot," so as to make it read "freight and passenger depot" instead of "freight depot." They then executed the deed and delivered it to Graham, who in turn delivered the check for $368.00 to them, and this check was paid by the appellants when it was presented for payment in the regular course of business. In a few days appellants demanded return of the $368.00, upon the ground that Graham had no authority to consent to a change in the deed, but they did not accompany this demand with a return of the deed.

The office of Mr. Justice, the appellants' division engineer at Whitesburg, was destroyed by fire shortly thereafter, and both the telegram and deed were destroyed, and presumably neither party had copies of same, as they were not produced at the trial.

Appellee J. P. Lewis stated the contents of the telegram, as he remembered it, to be as follows: "We will convey to you the right-of-way for the railroad for the main line and the east leg of 'Y' for the sum of $300.00 per acre, and donate them the west leg of the 'Y' and depot site inside of the 'Y,' upon condition they would

build a good and substantial depot on the property; I do not remember whether it said erect and maintain or not."

Mr. Hogg, in attempting to give the substance of the same telegram, said that as he remembered it, it provided that the railroad company "was to build a good freight and passenger depot upon the property, in consideration of the firm of Lewis, Hogg and Frazier donating this right-of-way for the 'Y' and depot site."

Accepting Mr. Lewis' version of it, which is more favorable to appellants, the telegram provided for the construction of a "good and substantial" depot at Neon.

Appellants' contention that the contract was never consummated is based upon the assumption that the minds of the parties never met in any definite agreement as to what kind of depot should be constructed. In support of this assumption they claim: 1. That the proposition embodied in the telegram prepared by Justice and providing for a depot simply, was changed by the appellees before acceptance by the insertion of the words "a good and substantial," and that the appellants never agreed to this change. 2. That Graham was without authority to consent to the alteration made by appellees in the deed before execution, and that besides he agreed to that change upon condition only that his superiors would approve of same, which they did not do, but on the other hand promptly repudiated his action in accepting the altered deed and delivering the check for the $368.00.

In the first place, appellants are in error in assuming that the insertion in the telegram by appellees of the words "a good and substantial" before the word "depot" was a material alteration. This court, dealing with a similar proposition in Elkhorn and Beaver Valley Ry. Co. v. Dingus, 187 Ky. 812, 220 S. W. 1047, said: "In the absence of any stipulation in the contract as to the style and dimensions of the depot, the parties in making the contract must have contemplated that it should be such a depot as was suitable and adequate for the reasonable requirements of the normal passenger and freight business at the station where the railroad depot was to be situated." Hence the telegram as prepared by Justice in effect provided for the construction not only of a "good and substantial" depot, but for a depot that would take care of both passengers and freight business. To the same effect is Ecton v. L. & E. Ry. Co., 59 S. W. 864.

Even if this were not true, and of course appellants could have refused to accept the proposition upon receipt of the telegram regardless of whether there had been any change in the tentative proposition submitted by Justice, the fact remains that they accepted the proposition submitted by the telegram as altered by appellees, since immediately upon its receipt they not only took possession of the property, but thereafter through Mr. Peyton, their chief engineer of construction, whose authority is not questioned, wrote appellees the letter of June 12th, 1913, which conclusively proves an acceptance of the proposition as set forth in the telegram which appellees sent with the alterations embodied therein.

A contract, therefore, was consummated, providing for the erection by appellants, at Neon, of "a good and substantial" depot, and this under the authorities above cited meant a depot suitable to take care of both freight and passenger business.

This being true, even if it could be conceded that Mr. Graham did not have the power to consent to the insertion in the deed that the depot was to be a freight and passenger depot, his superiors who did have the authority to represent the company, could not have refused to accept the deed so providing, since such a deed fulfilled appellees' obligations under the contract the parties had made, unless possibly as to warranty, and the railroad company with knowledge of the condition of the title later agreed, as the evidence conclusively shows, to accept a deed of special warranty.

Having reached the conclusion, as seems to us inevitable from the evidence, that appellants with knowledge of the title, which was matter of record, agreed to purchase the rights-of-way and depot site from appellees and to accept a special warranty deed therefor, and in pursuance of this contract acquired and still retain possession of the property, without other title or authority for so doing, and never having been evicted and no one even claiming adversely, it seems necessarily to follow under a familiar rule of law that they cannot retain possession thus acquired and at the same time resist the performance of the consideration which enabled them to acquire the possession, at least, of the property from appellees, even if, as claimed, appellees had no title thereto.

But we need not rest the case here, because appellees not only were in possession of most of the property, which by reason of the contract they surrendered to appellants,

but besides they had title to and full right to convey the depot site at least.

It is conceded that appellees, claiming title under Sarah Yonts, had only such title as she had not theretofore conveyed to the Northern Coal & Coke Company, to whom she had conveyed all the minerals in the land except the gold and silver, and in addition numerous enumerated rights and privileges, including "The exclusive rights-of-way for any and all railroads    .    .    . that may hereafter be located on said land by the parties of the first part (the Yonts), their heirs, representatives or assigns, or by the party of the second part (the Northern Coal and Coke Company), its successors, or assigns, or by any person or corporation, with or without the authority of either of said parties, they or its heirs, representatives, successors or assigns."

It is contended by appellants that this grant by its very terms conveyed to the coal and coke company all rights-of-way for railroads over the land that might be thereafter located thereon, no matter by whom, or whether rightfully or wrongfully, and that therefore appellees had no power or right to convey to appellants any of the property they attempted to sell them.

Conceding that the language employed in the quoted clause is broad enough to bear this construction, it is yet impossible for us, considering the entire deed, to believe that the grantors in conveying the minerals and all such rights and privileges as were necessary or considered necessary for removing same, ever intended to dedicate the whole of the surface for railroad purposes to any person or corporation that might desire a right-of-way on the land so completely that it would not be necessary for such person or corporation to first obtain consent from either the grantor or grantee.

Yet such a conclusion would necessarily follow from the adoption of the construction urged by appellants, although the deed in all other respects expresses the intention very clearly of conveying to the grantee only named minerals and the rights and privileges ordinarily appurtenant thereto, and to retain for the grantor the surface, and all other surface rights and privileges.

But even if we accept appellants' construction, which is at least strained when the whole deed and its evident purposes are considered, there is a reservation in the deed which renders untenable appellants' position that there was a total failure of consideration. The Yonts ex-

pressly withheld from the coal and coke company the right to locate any depot upon the 11.64 acres of land, which includes the depot site and rights-of-way conveyed to appellants. When they later conveyed their every interest in the land to appellees which they had not previously conveyed to the coal and coke company, they necessarily conveyed the withheld right of permitting any part of the surface of this 11.64 acre tract being used for depot purposes, and this right and the surface needed therefor appellees certainly had the power to sell to appellants.

It therefore follows that in any view there was not a total failure of consideration for the deed to appellants, and even if it might be conceded that appellants had the right to a *pro tanto* cancellation of the consideration, which we do not think is true, they did not ask it or furnish evidence upon which such relief could have been granted.

We do not mean to indicate that even as to the rights-of-way the appellees had no interest they could convey, for we are inclined to believe otherwise, but we do hold that even if this be conceded to be true, the court was not in error in requiring the appellants to answer in damages for the breach of their contract to construct a freight and passenger depot at Neon.

3. Appellants suggest rather than argue that the court applied an erroneous measure of damages in not limiting the recovery to the actual value of the land taken for rights-of-way and the depot site, in support of which they cite L. & N. R. R. Co. v. Crowe, 156 Ky. 27, 160 S. W. 759. There is no analogy, however, between that case and the one at bar, since the continuance of an annual pass to the grantor was rendered illegal by an act of Congress, and the court held that in view of this fact, "some other medium of payment should in good conscience be substituted for the medium which is no longer available; or, appellee should recover or be restored to the rights he had when the said deed was executed by him."

In view of the fact that restoration, after the railroad had built its tracks upon the land, would be neither equitable nor possible, the court held that the only possible equitable way to adjust the matter was to require the railroad company to pay the reasonable value of the land at the time it was taken.

We are not forced to any such expediency in this case, as the performance of their contract by the appellants

was not made illegal by law and there is no reason why they should not answer for their voluntary failure to perform their contract by paying to the appellees the damage they have suffered as a result of such failure, which is the difference in the value of appellees' adjacent lands which they had laid out into a town site and which the depot was intended to serve, with and without a depot. This the evidence shows was $5,000.00, the amount of the judgment, or more. We therefore find no merit in this contention.

4. Another complaint is that the provision in the deed from Sarah Yonts to the Northern Coal and Coke Company, providing that "There is to be no mining houses nor depot erected on tract No. 1746, containing 11.64 acres," was an inhibition running with the land against a depot ever being constructed thereon by either party. We do not, however, so construe this provision of the deed, but regard it rather as an exception or reservation for the benefit of the grantors, which they could and did transfer to appellees.

5. It is also urged that the contract sued upon is champertous, and therefore void.

This position is not maintainable under any possible construction of the deed from the Yonts to the coal and coke company, as appellees were certainly in possession of all of the surface conveyed to appellants, and the coal and coke company, even if it had the right under the deed to oust them by the location of a railroad right-of-way thereon, which is the most that could be claimed for that company, certainly never had done so, and no one was either holding or claiming any part of this land adversely to the appellees when they conveyed it to appellants, nor is anyone else now even claiming title thereto or a right to its possession.

6. The final complaint deserving notice is based upon the refusal of the court to order the reconveyance of the depot site and rights-of-way involved herein by plaintiffs to defendants to supply the deed destroyed by fire before it was recorded. This relief was sought by defendants in their answer and counterclaim in the event the destroyed deed was held sufficient to comply with the contract between the parties therefor, which they denied. The case, begun as a common law action for damages, was transferred to the equity docket after the issues were formed and all questions raised by the pleadings were tried as

in equity by agreement of the parties. Hence the judgment should have granted to the parties every equitable and legal relief to which they were entitled under their pleadings and the proof. There is no statutory authority in this state for requiring the execution of another deed by the grantor to replace one already executed and delivered which is lost or destroyed before recordation while in the possession of the grantee and without fault of the grantor. But this court and many if not all others, have recognized the power and duty of courts of equity in the absence of such statutory authority, not only to establish and protect the title and possession of the grantee under such circumstances, but also to grant such relief as the circumstances of the case may require. Metcalf v. Standeford, 1 Bibb 618; Helm v. Eastland, 2 Bibb 193; 17 R. C. L. 1179, and note to Mathews v. Mathews, 94 A. S. R. 470.

Just as plaintiffs' right to recover the damages adjudged to them depended upon the sufficiency and validity of the destroyed deed, so defendants' security of title and possession of the premises thereby conveyed against possible claims thereto by any one claiming through or under plaintiffs rest upon the same instrument; and these rights are not fully protected without recordation thereof now impossible. In these circumstances we are of the opinion defendants are entitled to have a deed which they can record. But as plaintiffs were in no wise responsible for their predicament, they should not have been put to costs or inconvenience thereby; and since defendants did not prepare and tender a new deed in accord with the original, together with the fees necessary for its execution, we do not think they can complain of the refusal of the court to compel its execution by the plaintiffs and upon their refusal by the court's commissioner, as was their prayer; but we are of the opinion that they yet should be given the opportunity to secure this relief if they so desire by supplementary proceedings before the action is finally stricken from the docket, since their right to such relief was not established until the validity of the deed was adjudged.

Finding no error in the record prejudicial to appellants' substantial rights the judgment is affirmed.