## Louisville & Nashville Railroad Company v. Johnson's Administratrix.

(Decided March 13, 1925.)

### Appeal from Lee Circuit Court.

1. Carriers—Railroads Must Render Adequate Service, Without Discrimination, to Public at Lowest Rates Possible.—Railroads, being servants of the people, must render adequate service, without discrimination, to public as a whole, and at the lowest rates possible consistent with a fair return on their property.

2. Railroads—Plea Held Bad in so far as Varying Contract to Build Depot.—In action for damages for failure to construct and maintain depot, plea that station was operated at increasing losses held bad, in so far as it sought to vary defendant's written contract to build depot near land of plaintiff's deceased, but held good against demurrer as setting up changed conditions since establishment of station.

3. Railroads—Abandonment of Depot Held Justified by Public Interests.—A railroad company, which constructed and maintained a depot pursuant to its contract with plaintiff's deceased, which did not, by its terms, require it to maintain same for any particular period, held entitled to abandon the station when the public interests necessitated abandonment by reason of changed conditions of traffic.

4. Railroads—Evidence of Decline in Income Held Admissible to Show Justification for Abandonment of Station.—In action against railroad company for breach of contract to construct and maintain a depot near the land of plaintiff's deceased, evidence of a decline in the income from the station held admissible in support of plea that public interest necessitated abandonment by reason of changed conditions of traffic.

5. Railroads—Company Not Responsible During Federal Control.—Railroad is not responsible for failure to maintain depot during federal control.

6. Railroads—Termination of Federal Control Revived Obligation to Maintain Depot.—Termination of federal control of railroads

revived railroad's obligation, if any, to construct and maintain depot improperly removed during federal control.

7. Railroads—Question of Failure to Construct Depot Held for Jury. —Evidence of failure of defendant to construct depot within contract time required submission of question to jury with instructions defining damages.

8. Railroads—Measure of Damages for Failure to Build Station Stated.—Measure of damages for failure of defendant railroad company to build a depot, within the time agreed in its contract with an adjoining owner, held to be the legal interest on the amount by which the value of land of such owner would have been enhanced by the erection of the building for the time its erection was delayed.

9. Railroads—Station Suitable for Traffic Required.—Railroad agreeing with property owner to build depot held required only to build station suitable for requirements of traffic conditions at that place.

ROSE & STAMPER, HUNT, NORTHCUTT & BUSH and WOODWARD & WARFIELD for appellant.

C. F. SPENCER and C. K. JOHNSON for appellee.

Opinion of the Court by Judge Dietzman—Reversing.

In 1912, Thomas C. Johnson, who owned a boundary of land along the Kentucky river in Lee county, for a valuable consideration deeded to the appellant for the purpose of straightening its track, a right of way through that boundary. As a part of the consideration for this conveyance, but in an instrument separate from the deed, appellant contracted with Johnson "to construct and maintain a combined freight and passenger station and a sidetrack on the lands described in said deed," at a point between certain termini to be selected by Johnson, "the said depot to be constructed on or before completion by said railroad company of its contemplated railroad over and through said lands." The depot was completed in March, 1915, but whether or not this was on or before the completion by the railroad company of the railroad through Johnson's land cannot accurately be determined from this record. According to appellant's proof, it was. According to appellee's proof, it appears, although very vaguely, that it was not. The station as constructed was maintained, although appellee complains bitterly of the manner in which it was maintained, until March, 1919. In this month the United

States Railroad Administration, which had had charge of appellant's railroad since 1917, tore down this depot and took away the sidetrack, and there has been no depot or sidetrack at this point or at any point on Johnson's land since then. The railroads were returned to their owners in 1920, and about a month thereafter, Johnson brought this suit against the appellant for breach of its contract to construct and maintain the depot and sidetrack. Pending this suit, Johnson died, and the case was revived in the name of the appellee as his administratrix. On the trial appellee secured a verdict for $20,000.00 and from that judgment appellant appeals.

At the outset of this case, we are confronted by the construction to be placed on the contract of the parties. It is true that appellant obligated itself to construct and maintain a depot and sidetrack, but the contract is absolutely silent concerning the period of time this obligation is to continue. The trial court submitted this case to the jury on the theory that this obligation was a permanent obligation, despite the fact that there was nothing said in the contract about it being a permanent obligation.

Contracts of this character have been before the courts on numerous occasions for interpretation. There is one line of cases which holds that so long as the railroad occupies the right of way which it secured as a part of the consideration for its contract to construct and maintain a depot or sidetrack, it must so maintain the same. See Gray v. Chicago, M. & St. P. R. Co., 189 Ill. 400, 59 N. E. 950.

Another line of cases holds that a literal compliance with such a covenant or condition subsequent is all that is required, and that the railroad may cease at any time it wishes to maintain the track or depot.

A third line of cases, intermediate between the two theories above mentioned, holds that the railroad must continue to maintain the depot or sidetrack until the public interests require their abandonment. This view seems to us to be the correct one. It cannot be true that an agreement on the part of a railroad to maintain a depot at any particular point, at least without more, is an agreement to keep it there forever. It must be that such an agreement is made subject to the public needs, to the general exigencies of business, to the change, modification and growth of transportation routes, as these may affect the requirements of a railroad company's business.

Railroads are the servants of the people. Their duty is to render adequate service, without discrimination, to the public as a whole and at the lowest rates possible consistent with a fair return on their property. Any undue burden on the railroad must necessarily interfere with this common law obligation, and hence when parties enter into a contract of this character, especially where they omit from their contract the obligation of perpetuity, they must be held to have contemplated the fact that the railroad may, when the future needs of the public or the public interests require it, abandon said depot or sidetrack. Lucas v. New York, N. H. & H. R. Co., 130 Fed. 436; Texas & P. R. Co. v. Marshall, 136 U. S. 393; Jones v. Newport News & M. Valley Co., 65 Fed. 736; Texas & P. R. Co. v. Scott, 77 Fed. 726; Little Rock & Ft. S. R. Co. v. Birnie, 59 Ark. 66, 26 S. W. 528; Jeffersonville, M. & I. R. Co. v. Barbour, 89 Ind. 375; Maryland & P. R. Co. v. Silver, 110 Md. 510, 73 Atl. 297; Scheller v. Tacoma R. & Power Co., 184 Pac. 344 (Wash.). The case of Board of Trustees of Elizabethtown v. Chesapeake, etc. R. Co., 94 Ky. 377, 22 S. W. 609, is in line with these authorities. In this case the town of Elizabethtown subscribed $75,-000.00 to the capital stock of the railroad company upon condition that the road between Elizabethtown and Paducah be constructed, and that the company build machine shops in Elizabethtown. This the company did. Some twenty years thereafter, the company removed the machine shops from Elizabethtown to Paducah. Thereupon suit was brought for damages on account of said removal. As the evidence showed that the removal was a matter of convenience to the public as well as the railroad, the court denied a recovery. The cases of L. A. & P. V. R. Co. v. Whipps, 118 Ky. 121, 80 S. W. 507; Ecton v. L. & E. R. Co., 22 Ky. L. R. 1133, 59 S. W. 864; L. H. & St. L. R. Co. v. Baskett, 104 S. W. 695; Elkhorn & Beaver Valley R. Co. v. Dingus, 187 Ky. 812, 220 S. W. 1047; L. & N. R. Co. v. Letcher County, etc., Co., 195 Ky. 297, 243 S. W. 45, are not in conflict with these views.

In all of these cases, the suit was for the failure of the railroad company to construct at all a depot or sidetrack, and it was correctly held that the railroad company was responsible in damages for such failure But that is not the question presented in this case, for here the railroad company did construct the depot and did maintain it for a number of years. The question before us is how long must the railroad company continue to

maintain the depot after it has once constructed it? Applying the principle we think to be the correct one to the instant case, we find that by the second paragraph of appellant's answer, it pleaded, in substance, that at the time the depot was established on Johnson's land, it was expected that it would serve a large section of outlying country, but due to the fact that Johnson would not or could not come to any agreement with the county authorities about a road through his place to his station, a bridge had been erected near Johnson's land over the Kentucky river whereby practically all the traffic, except that of Johnson and his family, which it was expected that the station on Johnson's land would serve had been diverted to a station called Tallega, about two miles up the railroad from Johnson's station, since which time this latter station had been conducted at a loss which grew greater each year. In so far as this plea undertook to vary the appellant's written contract with Johnson by an alleged oral agreement concerning a public road through Johnson's land, it was and is bad and is no defense to this action, but in so far as it set up the changed conditions since the station was established and the reasons for its abandonment based on the public interests, it did present a defense. Hence, the demurrer to this paragraph should have been overruled.

In this connection it may be said that the evidence offered by the appellant concerning the decline in income from Johnson's station was competent as tending to show the necessity for its abandonment based on the public interest in no longer maintaining at a loss a station which did so little business.

The appellant was not entitled to a peremptory instruction on the record as presented. It so claims, however, on the idea that it was the United States Railroad Administration which removed the station and for whose actions it is not responsible. It needs no citation of authority to support the statement that the railroad company is not responsible for the actions of the railroad administration. In so far as there was any failure to maintain a depot on Johnson's land during the period of federal control, appellant cannot be held liable. But the period of federal control having passed, and the railroad having been restored to appellant, its obligation, if any, to appellee, suspended during federal control, again revived. The obligation to maintain as long as it continues in effect requires the company to restore for the purpose

of maintenance a depot or siding which has been removed improperly or by some *vis major*. As there was some evidence to prove appellant had not constructed its depot within the contract time, the court should have submitted this question to the jury with an instruction defining the measure of damages, if any, on this branch of the case as the legal interest on the amount by which the value of Johnson's land would have been enhanced by the erection of the building for the time its erection was delayed. Elkhorn & B. V. Ry. Co. v. Dingus, *supra*. In so far as maintaining the depot is concerned, the court erred in peremptorily instructing the jury to find for appellee on the theory that the obligation to maintain was a permanent one, and also erred in failing to give the jury any standard concerning the character of the depot to be constructed and maintained. On a retrial, the court should instruct the jury in effect that the appellant is required by its contract to construct and maintain only such a depot as is suitable and adequate for the reasonable requirements of the normal passenger and freight business at the place where the depot was to be located, Elkhorn & B. V. Ry. Co. v. Dingus, *supra;* that its obligation to maintain such depot extends only so long as the public interest does not require its abandonment, and that the appellant is not responsible for the failure to maintain a depot on Johnson's land during federal control.

The question raised as to the excessiveness of the verdict is not passed on as it may not occur again on the new trial.

For the reasons above set out, the judgment of the lower court is reversed, with instructions to grant appellant a new trial in accordance with this opinion.