# Johnson's Administratrix v. Louisville & Nashville Railroad Company.

(Decided November 23, 1928.)

## Appeal from Lee Circuit Court.

1. Appeal and Error.—Where, on reversal of judgment, mandate of Court of Appeals was filed in open court prior to calling of case for trial, and plaintiff's counsel announced their readiness for trial, and selected jury, except last step of passing names of stricken jurors to clerk, held that, no prejudice to plaintiff being shown, plaintiff could not complain because mandate was not filed 10 days before term and after notice to plaintiff, as required by Civil Code of Practice, sec. 761, subd. 2.

2. Railroads.—Railroad, constructing depot pursuant to contract with adjoining landowner, which did not require maintenance of depot for any particular time, could abandon depot when public interest no longer required it, regardless of enhanced value of land of adjoining owner.

3. Railroads.—Evidence held to show that public necessity did not require railroad, on termination of federal control, to reconstruct depot, which had originally been constructed pursuant to contract with adjoining landowner.

C. F. SPENCER and C. X. JOHNSON for appellant.

HUNT, NORTHCUTT & BUSH, ROSE & STAMPER, ASHBY M. WARREN and WOODWARD, WARFIELD & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is the second appeal of this case. The first one is reported in 207 Ky. 813, 270 S. W. 58. In that opinion the facts out of which the litigation grew are stated, and will not be repeated in this one. The first opinion settled the rights of the parties upon the record as then presented, as well as adjudged their rights arising from the facts that might be developed under the various contentions made, and reversed the judgment in favor of plaintiff, rendered by the trial court. It was rendered on March 13, 1925, and the mandate issued on April 19 of the same year, but was not filed in the court below until April 22, 1926, during a regular term of the court wherein the cause was pending. The issues made by the pleadings, as shown by the record on the first appeal, were thereafter and at the same term of court amended and remodeled; by which the contentions were stated with more elaboration, but with little, if any, changes in substance.

As finally made on the second trial, there was presented for determination the two substantial issues of (1) whether defendant and appellee, Louisville & Nashville Railroad Company, constructed the kind of depot and side track that it had agreed to do within the time and maintained it as agreed, and, if not, the amount of damages to which plaintiff was entitled on account of such failures; and (2) whether it was the duty of defendant to reconstruct and maintain the depot after the termination of federal control, during which time it was removed, and, if so, then the extent of the legal damages flowing from its failure to do so?

The first opinion held, in substance, that those were the only two triable issues, and, as above stated, they were not materially altered by amendment or otherwise upon a return of the case, but only more fully and completely stated. So that, upon the last trial they were the only ones, as we interpret the record, to be investigated. At the close of the evidence, which was voluminous, the court submitted issue (1) to the jury, and it returned a verdict in favor of plaintiff for the sum of $600, which, in substance, found that defendant had not constructed the depot and side track, either within the time stipulated in its contract, or in the manner agreed to therein, and that by reason of such violations plaintiff was damaged to the extent of the amount of the verdict, for which judgment was rendered. But the court at the same time sustained defendant's motion for a peremptory instruction on issue (2), upon the ground that the relevant proof heard thereon at the second trial failed to establish the public needs or public necessity for the continued maintenance of the depot after the expiration of federal control, at which time the management of the road was turned back to defendant, and in that event, under the interpretation that the trial court gave to our former opinion, defendant was under no legal obligation to maintain the depot under such circumstances, and, if not, it was under no obligation to reconstruct it, since such reconstruction would be futile, if defendant could immediately thereafter abandon it, and which interpretation is undoubtedly correct, if supported by the necessary facts.

On this appeal by plaintiff a preliminary question of practice is first presented, and which is, that the mandate

was not filed 10 days before the term at which the second trial was had, and after notice given to plaintiff, and for that reason the cause did not stand for trial at the regular April, 1926, term of the trial court, although the mandate was filed during that term and in open court. Two answers are made by defendant to that contention, and which we think are meritorious, and they are, as shown by the record: First, that plaintiff participated in the remodeling and re-formation of the issues after the mandate was filed, and upon the calling of the case for trial both parties announced ready, and a jury of 18 qualified members was put in the box, and each side struck therefrom 3 names. The defendant passed to the clerk the names it had stricken, but at that time, although plaintiff's counsel had stricken 3 names from the list before handing them to the clerk, they for the first time announced the fact that the mandate was not filed 10 days before that term of court, and then moved that the preparatory proceedings to enter into the trial up to that time be set aside and the cause continued; and, second, that the provisions of subdivision (2) of section 761 of our Civil Code of Practice apply only in case the appellee desires a trial "at the next succeeding term" of the trial court following a reversal of the judgment by this court, and has no reference to a trial occurring at a subsequent term to that succeeding one, if the mandate is filed in any of the permissible methods of the declared practice.

Nothing appears in the record to show that plaintiff was prejudiced by not continuing the case. Counsel representing her had announced their readiness for the trial, and the task of selecting the jury had proceeded to the last step before the question was raised, leaving undone only the simple act of passing to the clerk the names that counsel for plaintiff had stricken from the qualified jury of 18 members. Under such circumstances, we think the motion came too late, and, in the absence of a showing that counsel had in some manner been misled, and thereby induced to proceed to that stage of the trial, to the prejudice of their client, it would be extremely technical, and constitute a surrendering of the substance for the shadow, to sustain this contention. Litigants and attorneys should not be permitted to so practice cases, and to induce the court and their adversary to believe that a good-faith trial was intended, and then to disaffirm

their actions, in the absence of a showing of some substantial reason for such disaffirmance. It is admitted that the mandate was filed in open court prior to the calling of the case for trial, and it is not intimated that plaintiff's counsel had no notice thereof. Under the circumstances, we are unwilling to give our approval of the contention of counsel on this question of practice.

Moreover, it would seem from the language of the section of the Code referred to, and from prior opinions of this court construing it, that this contention should be disallowed under the second answer made thereto. See cases of Baker v. Baker, 87 Ky. 461, 9 S. W. 382, 10 Ky. Law Rep. 430; Chestnut v. Russell, 69 S. W. 965, 24 Ky. Law Rep. 704; Drovers' & Mechanics' National Bank v. Northern Coal & Coke Co., 133 Ky. 773, 119 S. W. 151; Lay v. Commonwealth, 217 Ky. 99, 288 S. W. 1047. It is true that it was held in the case of Lloyd v. Matthews, 92 Ky. 300, 17 S. W. 795, 13 Ky. Law Rep. 537, that certain portions of the opinion in the Baker case, with reference to the filing of the mandate at the first term after the reversal of the cause during that term and without notice, were dictum; yet that opinion on the question involved was not disapproved in the Lloyd opinion, as is pointed out in our subsequent one in the Chestnut case, and the substance of all the opinions are to the effect that, if the opposite party has notice of the filing of the mandate, or does not timely object to its filing, or to the fact that it was not filed at all, and enters into the trial of the case, his rights are fully protected, and the purpose of the provisions of the Code are fully met.

Coming now to consideration of the merits, the record discloses that at the close of the evidence, which was voluminous, the court submitted issue No. 1 to the jury in the form as directed in our first opinion, although counsel for plaintiff take issue with that proposition. We have carefully examined the instruction submitting that issue, and we are unable to follow counsel in their criticism of it. Without inserting it herein, we deem it sufficient to say that it substantially conforms to the directions given in our first opinion, and we do not agree with counsel that the court departed from such directions in submitting it.

The principal and chief contention, on this appeal, is directed to the alleged error of the court in sustaining defendant's motion for a peremptory instruction upon

the issue of defendant's duty, under the contract sued on, to reconstruct the depot after the ceasing of federal control, which occurred on March 1, 1920. Incidentally, complaint is made of the ruling of the court in rejecting offered testimony by plaintiff, but, without reciting it, we deem it sufficient to say that in the great majority of such rulings the court was correct, and in the instances where it was otherwise we find no avowals as to what the witness would state. Much of such testimony, although the court permitted some of it to be answered, related to the increased value, because of convenient service, to the Johnson farm by the continued maintenance and operation of the depot, and which, under our first opinion, did not enter into the measuring of defendant's duty, or its obligation under its contract. On the contrary, according to that opinion, it did not, under the terms of the contract, obligate itself to maintain the depot any longer than the public needs required it; the language being:

"It cannot be true that an agreement on the part of a railroad to maintain a depot at any particular point, at least without more, is an agreement to keep it there forever. It must be that such an agreement is made subject to the public needs, to the general exigencies of business, to the change, modification, and growth of transportation routes, as these may affect the requirements of a railroad company's business. Railroads are the servants of the people. Their duty is to render adequate service, without discrimination, to the public as a whole, and at the lowest rates possible consistent with a fair return on their property. Any undue burden on the railroad must necessarily interfere with this common-law obligation, and hence, when parties enter into a contract of this character, especially where they omit from their contract the obligation of the perpetuity, they must be held to have contemplated the fact that the railroad may, when the future needs of the public or the public interests require it, abandon said depot or side track."

To prove that there was no longer any such public necessity, following the restoration of the road to defendant by the federal government, it introduced a great number of witnesses, consisting of merchants

within the radius that the depot in question would most likely serve, and those who hauled their freight from the stations on defendant's line to which it was shipped, and not one of them sustained plaintiff's contention of the *public necessity* for the maintenance of the depot. On the contrary, they all stated that other nearby stations, the principal one of which was New Tallega, located only about one mile and a half from the depot in question, were not only more convenient to patrons of the railroad in its vicinity and serving the territory, but that the roads leading to such other stations, particularly New Tallega, were far better for travel and furnished more ready and convenient access than did the road leading to Johnsonville, the name given to the depot in question. Furthermore, it was shown, by teamsters and the merchants served by the defendant, that the territory on the side of the tributary of Kentucky river where Johnsonville was located had no public road to travel the entire distance to that depot, and that a part of the route was from the public road, across the Johnson farm, to the depot, and that a charge of 50 cents per trip was made by the owners of the Johnson farm, upon the ground that such toll was necessary to maintain that portion of the road. A public road leading from a different direction did extend to the depot in question, but the residents in the territory through which it passed patronized other stations, except a few persons who lived on a named creek, who were more conveniently located to Johnsonville than to the other depots. However, it was shown that such persons had but little patronage to bestow. Their number consisted of only eight or ten families, and they had access to other railroad stations located but slightly farther from their habitations than was Johnsonville. Surely, it could not be truthfully said that such a small number of patrons, though indisputably proven to be such, would constitute "the public," in the sense that their slightly superior convenience would create such a *public necessity* as required defendant to continue to maintain the depot. It was shown that the receipts from the maintenance of the depot before it was removed were much less than the expense of operation, and the deficit was a burden on defendant, and to that extent interfered with its "common-law obligation" to serve the general public.

Some complaint is made with reference to the manner in which the defendant maintained the depot from the time it was constructed until control of it was taken over by the federal government, but all of that was taken care of upon that branch of the case upon which plaintiff recovered judgment and none of it had relevancy whatever to the facts with reference to the *public necessity* for the continued maintenance of the depot at the time of the ceasing of federal control.

Much of the record is taken up with testimony relating to the enhancement of plaintiff's farm, as such, if the maintenance of the depot on it was continued and by which a convenient shipping point for its products would be furnished, but, as hereinbefore stated, and as held in the first opinion, that is not the criterion of defendant's duty or obligation. Upon examination of the record upon the issues as outlined in the first opinion and those investigated on the second trial, we fail to find any error whereby plaintiff's substantial rights were prejudiced. A detailed statement of the evidence could serve no useful purpose, and could be of no benefit to the profession, and for that reason we have contented ourselves with a brief statement of the substance of the testimony heard by the court on the second trial of the involved issues.

For the reasons stated, the judgment is affirmed.