## Louisville & Interurban R. Co. v. Guenther et al.

(Decided May 25, 1937.)

BRUCE & BULLITT, JOHN E. TARRANT and WM. H. ABELL for appellant.

LEE HAMILTON and LLOYD W. GATES for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming on cross appeal and reversing on original appeal.

L. A. Guenther and his wife, Anna Guenther, brought this action against the Louisville & Interurban Railroad Company to recover $1,000 liquidated damages for breach of covenant. From a judgment in their favor for $250, the Louisville & Interurban Railroad Company has prayed an appeal, and plaintiffs have prayed a cross-appeal.

The facts are: On April 1, 1907, W. B. Wilson, Agnes M. Wilson, E. W. Wilson and Mary Wilson Travis, who were joint owners of a 212-acre farm near Middletown, in Jefferson county, sold and conveyed to the Louisville & Eastern Railroad Company, predecessor in title of the Louisville & Interurban Railroad Company, a right of way over their land 50 feet wide and 181 feet long, containing 20/100 of an acre. The consideration was $1 and the mutual covenants contained in the deed. The covenants are set forth in the following language:

"Provided that as part consideration of this conveyance, the party of the second part for itself, its successors and assigns, has agreed and by the acceptance of this deed hereby does agree to build

and maintain a fence along the line of the strip herein conveyed, and also to build and forever maintain at a point on said strip to be selected by the parties of the first part, a safe and proper crossing for vehicles and stock for the purpose of egress and ingress between the two tracts of land belonging to the parties of the first part, on either side of said strip, at which crossing the party of the second part agrees that all cars or railroad trains operated by the party of the second part, its successors and assigns, over said strip, shall stop regularly on signal; except such cars or trains as second party shall operate, known as limited cars or trains, which limited cars or trains, making no stop, shall at no time exceed in number one-half of the whole number of trains operated by said party of the second part over said tract of land.

"It is further agreed by the party of the second part, its successors and assigns, that for any willful or continued breach by the party of the second part, its successors and assigns, of the provisions of this agreement relating to the stopping of trains at the crossings aforesaid, that the damages of the parties of the first part by reason of such breach shall be and hereby are mutually assessed and agreed upon at One Thousand Dollars ($1000), to be recovered by the said parties of the first part, their heirs or assigns, in an ordinary action at law against the party of the second part, its successors or assigns."

Subsequent to the grant of the easement, the joint owners partitioned the farm into 4 tracts, and W. B. Wilson acquired the tract over which the easement had been granted. In making the partition, the other owners assigned to W. B. Wilson their interest in the covenants contained in the original deed conveying the right of way. Through various conveyances, L. A. and Anna Guenther have become and are now the owners of the W. B. Wilson tract. It was alleged in the petition that the Interurban Company had breached and broken every one of the agreements and stipulations set forth in the petition; that the breach was willful and continued; and that the company had abandoned the railroad entirely. The Interurban Company presented the following defense: For several years prior

to the abandonment of the operation of the Louisville & Shelbyville line, the company sustained large losses in the operation of trains and cars between Louisville & Shelbyville. For the year 1931 the loss was $7,738.18; for the year 1932, $17,981.89; in 1933, $17,103.85; and from January 1, 1934, to May 15, 1934, when the operation of the line was abandoned, the loss was approximately $10,000. The operation of the line constituted an undue burden and drain on the Interurban, and interfered with the fulfillment of its common-law obligation to render service to the public, and had the operation continued, it would have bankrupted the Interurban Company and made it impossible for it to serve on its other lines. The discontinuance of the line did not inconvenience or cause any damage to the plaintiff, and was necessitated by the failure of persons desiring to travel or to transport freight between Louisville and Shelbyville and intermediate points to use the line to a sufficient extent to allow it to operate without a loss. The agreement concerning the stopping of trains at the crossing was not an agreement that the cars should be operated, and the service be continued in perpetuity, but was one terminable upon reasonable notice, and such notice was given. The law and facts being submitted to the court, judgment was rendered as set out above.

The case is not one where the fee-simple title to the land over which the right of way ran was conveyed to the carrier. Only an easement was granted, and it is conceded that the title to the land is now in the Guenthers, free of the easement. Although the deed contains an agreement by the parties of the second part to build and maintain a fence along the strip of land conveyed, and also to build and forever maintain a safe and proper crossing for vehicles and stock, the provision for liquidated damages does not apply to either of those agreements, but is confined by its terms to the stopping of trains at the crossing, the language being, "that for any willful or continued breach by the party of the second part its successors and assigns, of the provisions of this agreement relating to the stopping of trains at the crossing aforesaid, that the damages of the parties of the first part by reason of such breach shall be and hereby are mutually assessed and agreed upon at One Thousand Dollars ($1,000)." etc. Not only so, but the language of the agreement concern-

ing the stopping of trains on signals is ''that all cars or railroad trains operated by the party of the second part, its successors and assigns, over said strip shall stop regularly on signal, except such cars or trains as second party shall operate, known as limited cars or trains,'' etc. In other words, there is no agreement to operate cars, or trains, but only an agreement, that, with certain exceptions, all cars or railroad trains ''operated'' shall stop regularly on signal. In Louisville & N. R. Co. v. Johnson's Adm'x., 207 Ky. 813, 270 S. W. 58, it was held that a railroad company which constructed and maintained a depot pursuant to its contract, which did not by its terms require it to maintain the same for any particular period, was entitled to abandon the station when the public interest necessitated abandonment by reason of changed conditions of traffic. If that is the rule where a station is abandoned, there is all the more reason why it should apply where a line is abandoned in good faith. Indeed the courts differing from the view taken in the above case merely hold that the condition in the deed should be complied with so long as the grantee holds and uses the land. Gray v. Chicago, M. & St. P. R. Co., 189 Ill. 400, 59 N. E. 950. There is no case holding that the obligation continues after that time. Looking at the language of the deed in the light of the above rule, it seems to us that the duty to stop trains on signal continued only as long as the right of way was used by the company for the operation of trains, and that the duty ceased when the losses in operation made it necessary to abandon the line in the interest of the public, and the line was abandoned in good faith. It follows that the Guenthers were not entitled to recover.

Wherefore, the appeal is granted, and the judgment is affirmed on the cross-appeal, and reversed on the original appeal, and cause remanded with directions to dismiss the petition.